**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 9 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JACK NEIL COLONNA,

    Defendant - Appellant.

No. 03-4074

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 00-CR-411- ST)**

---

Michael S. Lee, Assistant United States Attorney (and Paul M. Warner, United States Attorney, on the brief), Salt Lake City, Utah, for Plaintiff - Appellee.

Vanessa Ramos-Smith, Yengich, Rich & Xaiz, Salt Lake City, Utah, for Defendant - Appellant.

---

Before **KELLY**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **BRISCOE**, Circuit Judge.

---

**KELLY**, Circuit Judge.

---

    Defendant-Appellant Jack N. Colonna was convicted by a jury of

possession of firearms and ammunition by a convicted felon (Counts 1 & 2), 18

U.S.C. § 922(g)(1), and possession of marijuana (Count 3), 21 U.S.C. § 844. He was sentenced to 46 months imprisonment followed by three years supervised release. Mr. Colonna argues on appeal that (1) the affidavit supporting the warrant application was insufficient to support a finding of probable cause in view of the district court's findings that several assertions in the affidavit were false, inaccurate, or misleading; (2) the affidavit lacked a proper factual basis for nighttime entry and a no-knock provision; (3) the district court abused its discretion in refusing to dismiss Count 3 of the superceding indictment for preindictment delay, and refusing to sever Count 3; and (4) the evidence is insufficient to support the convictions on Counts 1 and 2. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

Background

On June 14, 2000, Deputy Brian Weidmer of the Salt Lake County Sheriff's Office sought a warrant to search Mr. Colonna's home. Attached to the warrant application was a supporting affidavit articulating Weidmer's basis for believing that Mr. Colonna was using his home as a drug distribution center. The affidavit noted the following:

¶10: Deputy Heinz Kopp told Deputy Weidmer that Mr. Colonna–whom Deputy Weidmer knew was a convicted felon–had bragged to Deputy Kopp about owning a handgun.
¶11: Deputy Weidmer saw Mr. Colonna covertly watching an unrelated

drug bust in West Valley City in a manner that suggested that Mr. Colonna himself had something at stake in the drug bust.

¶12: A confidential informant (CI#2) told Deputy Joel Knighton, who had previously received reliable information from CI#2, that CI#2 had watched Mr. Colonna make a drug delivery in Kearns, Utah.

¶13: Deputy Weidmer observed four men in a car waiting outside Mr. Colonna's home for several minutes. The men were led into Mr. Colonna's house after being met by him in his yard, after Colonna looked over his fence and up and down the street.

¶16: During a "trash cover," Deputy Weidmer removed the contents of a garbage container placed on the street in front of Mr. Colonna's home, and discovered two burnt roach ends of suspected marijuana cigarettes, a "twist" torn from the corner of a plastic baggie, a plastic baggie with a corner torn from it, and an empty container of Zig Zag cigarette papers.

¶17: Mr. Colonna had been arrested twenty-four times in Salt Lake City for various offenses and been convicted of two felonies.

I R. Doc 36.

A Utah state court judge issued the warrant, and a SWAT team executed the warrant shortly before 3:00 a.m. on June 22, 2000, after making a forcible, no-knock entry. During the search, officers discovered four firearms and several boxes of ammunition in the top drawer of a dresser inside Mr. Colonna's bedroom. Officers also found a marijuana pipe in another drawer of the same dresser,[1] and discovered marijuana in an adjacent night stand. In the family room, the officers found ammunition inside a bureau drawer.

Mr. Colonna was arrested and charged in a two-count indictment with

---

[1]Mr. Colonna claims that the pipe was located in another dresser in the bedroom.

possession of firearms by a convicted felon and possession of ammunition by a convicted felon, 18 U.S.C. § 922(g)(1). The district court denied a motion to suppress after holding a hearing under Franks v. Delaware, 438 U.S. 154 (1978). On August 21, 2002–almost two years after the original indictment was filed, and five days before trial was scheduled–the government filed a superceding indictment adding a charge of possession of marijuana. Mr. Colonna's motion to dismiss or sever the marijuana count was denied.

Discussion

A.    Sufficiency of the Affidavit.

Mr. Colonna argues the district court erred in failing to grant his motion to suppress (1) because the affidavit lacked probable cause on its face; and (2) because of "numerous falsehoods contained in the search warrant." Mr. Colonna also argues that the good faith exception to a defective warrant does not apply. Because the affidavit here supports a finding of probable cause despite its "numerous falsehoods," it also supports a probable cause finding on its face, and it is not necessary to apply the good faith exception.

In reviewing the denial of a motion to suppress, this court considers the totality of the circumstances and views the evidence in the light most favorable to the government. United States v. Higgins, 282 F.3d 1261, 1269 (10th Cir. 2002).

We accept the district court's factual findings unless they are clearly erroneous, although the ultimate determination of reasonableness under the Fourth Amendment is reviewed de novo. Id.

In the district court, Mr. Colonna pointed to five alleged falsehoods: (1) that Deputy Kopp told Deputy Weidmer that Mr. Colonna had bragged about owning or having guns, I R. Doc. 36 ¶ 10; (2) that Deputy Weidmer conducted a criminal history check of Mr. Colonna in early 2000, id. ¶¶ 10, 17; (3) that Mr. Colonna covertly watched the unrelated drug bust, id. ¶ 11; (4) that the garbage can belonging to Mr. Colonna was not on Mr. Colonna's property when removed, id. ¶ 16; and (5) that Deputy Weidmer had information from CI#2, id. ¶ 12. The district court found that the first statement was indeed a deliberate falsehood; it found that the second, third, and fifth statements "were, at the least, inaccurate or misleading," and refused to consider them. I R. Doc. 67 at 4.

"It is a violation of the Fourth Amendment for an affiant to knowingly and intentionally, or with reckless disregard for the truth, make a false statement in an affidavit. Where a false statement is made in an affidavit for a search warrant, the search warrant must be voided if the affidavit's remaining content is insufficient to establish probable cause." United States v. Basham, 268 F.3d 1199, 1204 (10th Cir. 2001) (citing Franks v. Delaware, 438 U.S. 154, 171-72 (1978)) However, a misstatement in an affidavit that is merely the result of

simple negligence or inadvertence, as opposed to reckless disregard for the truth, does not invalidate a warrant. Franks, 438 U.S. at 171-72.

Contrary to Mr. Colonna's view, the district court did not find that statements two, three and five (above) were "made with reckless disregard for the truth." Aplt. Br. at 11 (citing D. Ct. Order Denying Def.'s Mot. to Suppress, I R. Doc. 67 at 4). Instead, the district court merely found that the statements "were, at the least, inaccurate or misleading." This finding alone did not bar the court from considering those assertions in its determination of probable cause, for the inaccuracies could still be the product of negligence or innocent mistake. To the extent that the district court implicitly found a reckless disregard for the truth in those assertions and therefore did not consider them, the assertions concerning the evidence obtained from the trash cover support probable cause.

Mr. Colonna argues that "in light of all the falsehoods and statements made with reckless disregard for the truth, the district court clearly erred in believing the testimony of the officers with regard to the trash cover–the one item in the search warrant that the court relied upon to support probable cause." Aplt. Br. at 19. Thus, the only question is whether the district court committed clear error in finding that the trash can was on the street, and not on Mr. Colonna's property, when the officers conducted the trash cover. See California v. Greenwood, 486 U.S. 35, 41 (1988) (no reasonable expectation of privacy in garbage left out on

- 6 -

the street).[2]

Mr. Colonna presented evidence that Harry Haughan, one of Mr. Colonna's neighbors, claimed to have observed Deputy Weidmer and Deputies Yvette Zayes and Rex Mulholland as they retrieved a garbage can from Mr. Colonna's property in early June 2000. Mr. Haughan failed to respond to a subpoena but stated in an affidavit and told Mr. Colonna's investigator that he had observed the three officers remove Mr. Colonna's garbage can from Mr. Colonna's property. Mr. Haughan had been living with his mother across the street from Mr. Colonna at the time of the trash cover, and did not personally know Mr. Colonna or his wife.

Deputies Weidmer and Zayes (two of the three officers involved in the trash cover) testified that the trash can was on the street in front of Colonna's home. See III R. at 138, 188. The district court credited their testimony. I R. Doc. 67 at 4.

Mr. Colonna argues that the district court's finding crediting the deputies' testimony was clearly erroneous because Mr. Haughan's version is in clear conflict with that of the officers, and because other assertions made by Deputy Weidmer in the affidavit were untrue. "[A] finding is 'clearly erroneous' when

_____

[2]Mr. Colonna cites State v. Goss, 834 A.2d 316 (N.H. 2003), as showing a "trend" in courts finding that there is a reasonable expectation of privacy in trash left on the street. Reply Br. at 7-8. Given binding Supreme Court authority based on the federal constitution, we decline to follow a single state court decision interpreting the New Hampshire state constitution.

although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). We cannot duplicate the factfinding role of the trial court and "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (citations omitted). Moreover, in a motion to suppress, "[t]he credibility of witnesses, the weight to be given to evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court." United States v. Higgins, 282 F.3d 1261, 1269 (10th Cir. 2002).

Applying this standard of review, and viewing all evidence in the light most favorable to the government, the district court did not commit clear error in crediting the testimony of two police officer witnesses–who testified that the trash can was not on Mr. Colonna's property when they conducted the trash cover–over the testimony of another witness who made an out-of-court statement claiming that the trash can was on Mr. Colonna's property. Mr. Colonna has failed to cite any authority indicating that, simply because one or more statements in a warrant affidavit are found to be deliberately false, then all of the statements must be deemed false as well, and our research has not uncovered any such authority. Indeed, such a proposition would be at odds with the very holding of Franks,

which permits reliance on a warrant affidavit "when [the] material that is the subject of the alleged falsity or reckless disregard is set to one side [and] there remains sufficient content in the warrant affidavit to support a finding of probable cause." 438 U.S. at 171-72.

Finally, Mr. Colonna argues that the evidence found in the trash cover indicates only personal use of marijuana by someone in the residence, and that personal use alone does not justify the search of a home. Mr. Colonna has cited no authority to support the proposition that "mere personal use" of controlled substances in violation of the criminal laws is insufficient for a search warrant to issue. On the contrary, the Supreme Court has held that all that is required for a valid search warrant is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). We see no reason to distinguish between drug use and all other crimes for which a warrant is appropriate. See United States v. Chapman, 196 F. Supp. 2d 1279, 1284-85 (M.D. Ga. 2002) (holding that probable cause was established for a search warrant where trash cover revealed personal-use quantity of marijuana and steroids).

B.    Execution of the Search Warrant.

Mr. Colonna argues that the nighttime entry and no-knock provisions of the search warrant were not supported by the affidavit. "In order to justify a 'no-

knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of a crime by, for example, allowing the destruction of evidence." Richards v. Wisconsin, 520 U.S. 385, 394 (1997). Similar considerations justify the nighttime execution of a search warrant. See United States v. Tucker, 313 F.3d 1259, 1265-66 (10th Cir. 2002) (nighttime execution reasonable given risk of destruction of evidence, personal injuries to nearby residents, and property damage due to volatile nature of chemicals used to manufacture methamphetamine). In reviewing a challenge to the no-knock or nighttime execution of a search warrant, we review the execution from the perspective of reasonable officers who are legitimately concerned not only with doing their job, but with their own safety. United States v. Myers, 106 F.3d 936, 940 (10th Cir. 1997).

Mr. Colonna argues that the warrant affidavit failed to indicate any unusual circumstances that would justify a nighttime or no-knock search, claiming that the affidavit "merely contained conclusory assertions that the evidence may be easily destroyed, and generalizations that people who distribute controlled substances frequently are users and display paranoid and unpredictable behavior." Aplt. Br. at 35.

It is true that the mere likelihood that drugs or weapons will be found at a

particular premises does not justify a no-knock or nighttime execution of a search warrant. Cf. United States v. Jenkins, 175 F.3d 1208, 1214 (10th Cir. 1999). However, the affidavit here also pointed out that Mr. Colonna had been arrested 24 times in Salt Lake County and been convicted of two felonies. I R. Doc. 36 ¶ 17. These arrests were for a variety of offenses that could make a reasonable officer apprehensive, including strong arm robbery, aggravated assault, assault on a police officer, resisting arrest, aggravated robbery with a firearm, failure to stop for a police officer, and terroristic threats. Id. Additionally, Deputy Weidmer stated that Mr. Colonna had been "very aggressive with police officers" in the past, and has even "hit, punched, or otherwise attacked" certain officers. Id. ¶ 19. Finally, Weidmer also stated in the warrant affidavit that he "ha[d] observed children playing in the area during the day and afternoon," and that "[a] family with small children lives immediately to the north" of Mr. Colonna. Id. ¶ 38.

The reviewing court must look at the totality of circumstances in determining whether a no-knock or nighttime execution is reasonable. Here specific factors support reasonableness: Mr. Colonna's prior extensive involvement with law enforcement, the expressed fear of a concerned citizen that Mr. Colonna would retaliate violently, and the presence of children in the vicinity. The affidavit sufficiently supported the method of execution of the warrant.

C.      Count 3: Possession of Marijuana

Colonna argues that the district court erred in (1) not granting his motion to dismiss Count 3 of the superceding indictment for preindictment delay, and (2) not granting his motion to sever Count 3.

1.      Motion to Dismiss

We review a denial of a motion to dismiss for preindictment delay for abuse of discretion. United States v. Comosona, 848 F.2d 1110, 1113 (10th Cir. 1998). Preindictment delay is a violation of due process where (1) the defendant suffered "actual prejudice resulting from the delay," and (2) "the delay was purposefully designed to gain tactical advantage or to harass." Id.

To constitute a showing of actual prejudice, the defendant must show that he has suffered "definite and not speculative prejudice." United States v. Jenkins, 701 F.2d 850, 855 (10th Cir. 1983), overruled on other grounds by Batson v. Kentucky, 476 U.S. 79 (1986). Thus, "[v]ague and conclusory allegations of prejudice resulting from the passage of time . . . are insufficient to constitute a showing of actual prejudice for the purposes of preindictment delay." Id.

Mr. Colonna claims that "the actual prejudice to him is the fact that such a small amount of marijuana is typically never charged in federal court, but in State court as a Class B Misdemeanor," that the state statute of limitations had expired, and that the government seeks to file such a charge only to "taint Appellant's

character." Aplt. Br. at 43-44. Although it is highly unusual for the government to postpone additional charges until just five days before trial, much more is required for a finding of actual prejudice. See, e.g., United States v. Wood, 207 F.3d 1222, 1235 (10th Cir. 2000) (four-year preindictment delay was not prejudicial, even though body of victim was putrefied, and defendant's ability to refute autopsy's findings was lost); United States v. Trammell, 133 F.3d 1343, 1351 (10th Cir. 1998) (three year, nine month delay did not violate due process clause even though two witnesses had died, where defendant did not specifically allege how the witnesses' testimony would have been of benefit to his case). Mr. Colonna has not explained, for example, how the delay prejudiced him in his defense.

Nor has Mr. Colonna demonstrated that the government purposefully delayed joining Count 3 in order to gain a tactical advantage. As the government explained, Count 3 was added immediately after it had learned that state prosecutors had failed to charge Mr. Colonna with possession of marijuana prior to the expiration of the statute of limitations. Aple. Br. at 39-40 (citing I Supp. R. at 10). Mr. Colonna has not rebutted this explanation.

### 2. Motion to Sever

Mr. Colonna argues that his motion to sever should have been granted based upon Rules 8(a) (misjoinder) and 14 (prejudicial joinder) of the Federal

Rules of Criminal Procedure.

Misjoinder raises an issue of law; we therefore review a denial of a motion to sever under Rule 8 de novo. United States v. Janus Indus., 48 F.3d 1548, 1557 (10th Cir. 1995). According to Rule 8(a), joinder of offenses is proper if the offenses are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). On appeal, Mr. Colonna simply states that "his motion to sever should have been granted based upon Rule[] 8." Aplt. Br. at 46. As Mr. Colonna has failed to support this contention with any authority or argument, we deem the issue waived. Eateries, Inc. v. J.R. Simplot Co., 346 F.3d 1225, 1232 (10th Cir. 2003). Even were we not to find waiver here, the Rule plainly allows the joinder of the offenses for which Mr. Colonna was tried.

As for Mr. Colonna's claim of prejudicial joinder, we review a denial of a motion to sever under Rule 14 for abuse of discretion. United States v. Jones, 213 F.3d 1253, 1260 (10th Cir. 2000). Ordinarily, the district court's decision will not be reversed "absent a strong showing of prejudice." Id. "[A] mere allegation that defendant would have a better chance of acquittal in a separate trial" is not sufficient to warrant severance. United States v. Powell, 982 F.2d 1422, 1432 (10th Cir. 1992) (quoting United States v. Hack, 782 F.2d 862, 870 (10th Cir. 1986)). Consequently, "[t]he burden of a defendant to show an abuse

of discretion in this context is a difficult one." Jones, 213 F.3d at 1260.

Mr. Colonna's claim that "the mere mention of drug possession in determining the outcome of the firearm and ammunition charges necessarily prejudices the jury" is unavailing, Aplt. Br. at 48, and his case is distinguishable from the one case he cites for support, United States v. Dockery, 955 F.2d 50 (D.C. Cir. 1992). In Dockery, the defendant had been charged with four drug counts, a weapons count, and possession of a firearm by an ex-felon. The government refused to stipulate that the defendant had been convicted of a felony and instead introduced live testimony that the defendant had been convicted of an unspecified qualifying felony and ultimately sentenced to five years probation. See id. at 51-52. The government referred to the conviction six times during the trial. The trial judge, moreover, failed to instruct the jury that it could not use the felony conviction to infer propensity to commit the other charged crimes. See id. at 55. Finally, the evidence on the weapons charge was "extraordinarily weak," and the defendant was ultimately acquitted of that charge. Id. at 56. The combination of these factors caused the court to conclude, unlike this case, that prejudice had been shown. Id.

In refusing to sever drug charges from firearms charges, this court has held that there is "no essential unfairness when the relationship of the charges grew out of the defendant's own conduct." United States v. Valentine, 706 F.2d 282,

290 (10th Cir. 1983); see also Jones, 213 F.3d at 1260-61 (refusing to sever robbery and firearms charges). Here, the relationship of the charges clearly grew out of Mr. Colonna's own conduct, and the district court's refusal to sever the charges was not an abuse of discretion.

D.      Sufficiency of the Evidence.

Colonna argues that the evidence presented at trial did not support a conviction on Counts 1 and 2, possession of weapons and ammunition by a convicted felon. In reviewing the sufficiency of the evidence to support a conviction or a denial of a motion for judgment of acquittal, we review the record de novo to determine whether, viewing the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty of the crime beyond a reasonable doubt. See United States v. Hien Van Tieu, 279 F.3d 917, 921 (10th Cir. 2002).

In order to prove a violation of § 922(g)(1), the government must establish the following elements beyond a reasonable doubt: (1) that the defendant was previously convicted of a felony; (2) that the defendant thereafter knowingly possessed a firearm or ammunition; and (3) that the possession was in or affecting interstate commerce. United States v. Taylor, 113 F.3d 1136, 1144 (10th Cir. 1997). Mr. Colonna disputes only whether he "possessed" the weapons and ammunition.

"Possession" under § 922(g)(1) includes both actual and constructive possession.  See United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994). Generally, an individual has constructive possession over an object when he or she knowingly has ownership, dominion, or control over the object and the premises where it is found.  United States v. Valadez-Gallegos, 162 F.3d 1256, 1262 (10th Cir. 1998).  In most cases, dominion, control, and knowledge may be inferred where a defendant has exclusive possession of the premises; however, "joint occupancy alone cannot sustain such an inference."  Mills, 29 F.3d at 549.

In cases of joint occupancy, "where the government seeks to prove constructive possession by circumstantial evidence, it must present evidence to show some connection or nexus between the defendant and the firearm or other contraband."  Id.  "While caution must be taken that the conviction not be obtained by piling inference on inference, an inference of constructive possession is reasonable if the conclusion flows from logical and probabilistic reasoning." United States v. Lazcano-Villalobos, 175 F.3d 838, 843 (10th Cir. 1999) (internal quotation marks omitted).  In order to sustain a conviction based upon constructive possession, the government must present "evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband."  Hien Van Tieu, 279 F.3d at 922; Mills, 29 F.3d at 549-50.  Thus, knowledge and access are required to prove that the defendant

knowingly held the power to exercise dominion and control over the firearm. See United States v. Gorman, 312 F.3d 1159, 1164 (10th Cir. 2002).

Mr. Colonna cites an Eighth Circuit case, United States v. Martin, 180 F.3d 965 (8th Cir. 1999), and argues that the government must show that he had the "intention to exercise dominion and control." Aplt. Reply Br. at 13. This overstates what is required. Under Tenth Circuit precedent, where the defendant in a joint occupancy situation has knowledge of and access to the weapons, there is a sufficient nexus to infer dominion or control. See Mills, 29 F.3d at 550. It is not necessary to show that the defendant intended to exercise that dominion or control, nor is it necessary to show that the defendant actually owned the weapons–mere possession is enough.

Here, the evidence is sufficient to show knowledge of the guns in the bedroom. While being transported to the jail–and without being told where the guns were found–Mr. Colonna volunteered to Deputy Ford that "the guns inside the bedroom were not his," but "were his wife's." VI R. at 82; see also Aplt. Br. at 16, 52, 54. According to Deputy Ford, Mr. Colonna admitted that he "knew that [the guns] were there and he knew he shouldn't have had them." VI R. at 83.

Likewise, the evidence is sufficient to show that Mr. Colonna had access to the guns. The weapons were found in his bedside dresser. Deputy Weidmer testified that the handguns and ammunition were found in the top drawer of a

dresser that Rebecca Colonna had referred to as "Jack's dresser." VI R. at 69; see also id. at 73. Rebecca Colonna also testified that several months before his arrest, Jack Colonna had placed his son's marijuana pipe "in his dresser drawer," where it remained until it was seized. VI R. at 188. Deputy Weidmer later explained that the handguns and ammunition were found in the same dresser as the marijuana pipe. VI R. at 250.[3]

Additionally, although Rebecca Colonna had documents indicating that she had purchased two guns from Terry Carlson on two separate occasions, Deputy Weidmer testified that Carlson told him that Jack Colonna participated in the first transaction, and that Carlson also "alluded to having sold one of the guns . . . directly to Jack." VI R. at 118. Finally, although Rebecca Colonna claimed to have used and handled the handguns on multiple occasions, she could describe them only in the most general terms, and she was even unable to state the colors of the four guns. VI R. at 64, 71-72, 168. Based on this evidence, when viewed in the light most favorable to the government, the jury could have reasonably concluded that the guns and ammunition were found in Mr. Colonna's dresser

_____

[3]Mr. Colonna points to Rebecca Colonna's testimony that, while the marijuana pipe was located in Jack Colonna's separate dresser, the weapons and ammunition were located in her dresser. Reply Br. at 2 (citing VI R. at 137, 141, 157-58). Under these circumstances, the issue of where the guns were found was properly a question for the jury. See Hien Van Tieu, 279 F.3d at 922; United States v. McCoy, 781 F.2d 168, 171 (10th Cir. 1985).

drawer, and that he therefore had access to them.[4]

The Tenth Circuit cases cited by Mr. Colonna with a contrary result are distinguishable. In United States v. Taylor, 113 F.3d 1136 (10th Cir. 1997), the court found the evidence insufficient to convict where three men were linked to the bedroom where the firearm was located in a closet, and the only evidence connecting defendant to the room were receipts found in an entertainment center in the room. In United States v. Hishaw, 235 F.3d 565 (10th Cir. 2000), the government presented no evidence to rebut defendant's testimony that the car he was driving, which contained a gun under the passenger's seat, belonged to a friend of his brother, and the government's evidence of defendant's actual possession of a firearm involved incidents more than two years before the charged offense. Similarly, in United States v. Valadez-Gallegos, 162 F.3d 1256 (10th Cir. 1998), there was no evidence that the defendant, a passenger in a truck, knew about drugs hidden in the truck's ceiling, and therefore he could not have constructively possessed the drugs. Finally, in Mills, a third party had hidden guns in the common area of a shared dwelling unbeknownst to the defendant. 29 F.3d at 550. Unlike the instant case, in none of these cases did the government

---

[4]Because of our disposition of this issue, we need not decide whether, if the government failed to establish that the weapons were found in Mr. Colonna's dresser drawer, the evidence would nonetheless be sufficient for the jury to infer that Mr. Colonna had knowledge of and access to the weapons, thus supporting a finding of constructive possession.

establish the two requirements of knowledge and access.

AFFIRMED.