**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 2 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMES B. LANDSAW,

Defendant - Appellant.

No. 03-3168

(D. Kansas)

(D.C. No. 02-CR-40066-RDR)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **MURPHY**, and **McCONNELL**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. INTRODUCTION

Defendant Landsaw was charged, by indictment, with: (1) possession of a listed chemical knowing or having reason to believe that the chemical would be used to manufacture methamphetamine; and (2) conspiracy to manufacture and distribute methamphetamine. Landsaw moved to suppress evidence seized from his vehicle, arguing that the officers had no reasonable suspicion to stop his vehicle. Landsaw also moved to suppress evidence seized from his residence, arguing that the officer who obtained the search warrant should have informed the magistrate that the pseudoephedrine pills had already been seized from his vehicle.

Both motions were denied by the district court. The district court reasoned that the police officers had reasonable suspicion of criminal activity. The district court partially based this conclusion on its finding that defendant had just left his residence, where he purchased pseudoephedrine from a confidential informant ("CI") who was wearing a transmitting wire.

Landsaw pleaded guilty to Count 1 of the indictment, and the United States dismissed Count 2. Landsaw reserved his right to appeal the district court's denial of his motions to suppress. He was sentenced to 108 months' imprisonment and three years' supervised release. Landsaw appeals the denial of his motions to suppress the evidence seized from his vehicle and his residence.

Exercising jurisdiction pursuant 28 U.S.C. § 1291, this court **affirms** Landsaw's conviction.

## II.    BACKGROUND

The government sent a CI to Landsaw's house as part of a methamphetamine investigation. The CI had made arrangements to deliver ephedrine or pseudoephedrine pills to Landsaw and took the pills with him when he went to Landsaw's residence. The CI was wired, and the monitoring detective, one Dierks, overheard Landsaw talking about breaking down the pills. Landsaw told the CI that he would use the pills to make methamphetamine. Before the CI left Landsaw's residence, he delivered the pseudoephedrine pills to Landsaw as planned.

Meanwhile, officer Smith observed the informant and two or three people leave the residence. Shortly thereafter, the officer saw Landsaw drive away in his car. Smith radioed Dierks, who directed Smith to stop Landsaw's vehicle. Smith did not observe any traffic violations. He activated his emergency lights in an attempt to stop Landsaw's vehicle. Landsaw sped up and turned into his father's driveway, then stopped the car. Once the vehicle was stopped, Smith advised Landsaw that a warrant was being obtained to search his vehicle and his house as part of a narcotics investigation. Landsaw then consented to a search of his

vehicle. Smith searched the car and found a sack containing pseudoephedrine pills.

Dierks was called to the scene and saw the bag of pills in the back of the vehicle. It is unclear whether all the pills sold to Landsaw by the CI were in this bag. Afterwards, Dierks filed an affidavit for a warrant to search Landsaw's residence. The affidavit did not mention that Landsaw's car had been stopped and that it contained pseudoephedrine. The search warrant was issued and executed shortly thereafter. The officers who executed the warrant found several items in the residence related to the manufacture of methamphetamine, including lithium batteries and antifreeze.

## III. DISCUSSION

When reviewing a district court's denial of a motion to suppress, this court considers the totality of the circumstances and views the evidence in the light most favorable to the government. *United States v. McKissick*, 204 F.3d 1282, 1296 (10th Cir. 2000). This court accepts the district court's factual findings unless those findings are clearly erroneous. *Id.* The ultimate determination of whether there was reasonable suspicion or probable cause to conduct a search are reviewed *de novo. See Ornelas v. United States*, 517 U.S. 690, 691 (1996); *U.S. v. Colonna*, 2004 WL 233297, at *2 (10th Cir. Feb. 9, 2004).

**A. Denial of the Motion to Suppress the Evidence Seized from the Vehicle**

Landsaw argues that the district court erred in denying his motion to suppress the evidence seized from his vehicle. He argues that the evidence seized from his vehicle was the "fruit of the poisonous tree" because his vehicle was illegally stopped. Landsaw argues the stop was illegal because the police officers did not have reasonable suspicion to stop his vehicle. This court disagrees.

An investigative stop is a seizure within the meaning of the Fourth Amendment, and must be justified at its inception. *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968). The investigative stop must, given the totality of the circumstances, be justified by a particularized and objective basis for suspecting that the person stopped is, or is about to be, engaged in criminal activity. *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). Landsaw argues that there was no reasonable suspicion in this case because "the officers did not even know who they were stopping." This argument is unavailing. The officers testified that they recognized Landsaw and were reasonably sure that Landsaw was driving the vehicle.

Furthermore, the totality of the circumstances support a finding of reasonable suspicion that Landsaw was engaged in criminal activity. The manufacture of methamphetamine and the possession of pseudoephedrine with intent to manufacture methamphetamine are both crimes. *See* 21 U.S.C.

§ 841(a)(1) and § 841(c); 21 C.F.R. § 1310.02(a)(3). The district court found that while in the house, Landsaw had purchased pseudoephedrine from the CI, who was wearing a transmitting wire. Nothing in the record suggests that this finding is clearly erroneous. Because the CI was wired, the officers knew that Landsaw had purchased pseudoephedrine from the CI shortly before he got into his car. Landsaw also told the CI that he intended to use the pills to make methamphetamine. Dierks heard Landsaw say that he would break down the pills, and Dierks knew that pseudoephedrine pills are broken down with chemicals to manufacture methamphetamine. Thus, the officers had a particularized and objective basis for suspecting that Landsaw was in possession of pseudoephedrine pills with intent to manufacture methamphetamine.

For these reasons, the district court correctly concluded that the officers had, at a minimum, reasonable suspicion that Landsaw was engaging in criminal activity, which justified the investigative stop at its inception.[1] The district court

---

[1]Landsaw appeals the denial of his motion to suppress the evidence derived from the *Terry* stop solely on the grounds that the stop was not justified at its inception. Therefore, this court need not reach the second part of the inquiry of the reasonableness of the investigative search—whether the search was reasonably related in scope to the circumstances which justified the stop in the first place, *see United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998)—because Landsaw waived his appeal on that ground. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994).

therefore did not err in denying Landsaw's motion to suppress the evidence derived from the search of the vehicle.

**B. Denial of the Motion to Suppress the Evidence Seized from the Residence**

Landsaw further argues that the district court erred in denying his motion to suppress the evidence seized from his residence. Landsaw argues that Dierks made a material omission in the affidavit, and that the remainder of the affidavit did not provide probable cause to support the issuance of the warrant to search his residence. The court concluded that the warrant was valid because there was sufficient probable cause despite the omission, and that regardless, the warrant is saved by the good-faith exception as delineated in *United States v. Leon*, 468 U.S. 897, 919-22 (1984). The court reasoned that even if all the pseudoephedrine pills had been found in Landsaw's vehicle (a fact which the court found was uncertain), there would still have been sufficient probable cause in the affidavit to search for evidence of manufacturing and distribution of drugs.

This court need not reach the question of whether the good-faith exception applies because the affidavit establishes probable cause. *See Colonna*, 2004 WL 233297, at *2 (reasoning there is no need to apply the good-faith exception where the affidavit, despite its falsehoods, supports a finding of probable cause). Probable cause to conduct a search exists if there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v.*

*Gates*, 462 U.S. 213, 238 (1983).  When making a probable cause determination, a magistrate may draw reasonable inferences from the information in the affidavit. *See United States v. Rowland,* 145 F.3d 1194, 1205 (10th Cir. 1998).  Dierks' affidavit described:  (1) Landsaw's involvement in methamphetamine manufacturing activities dating back to July 2001; (2) a search of Landsaw's residence in August 2001 which produced evidence of methamphetamine manufacture; (3) information from several different CIs, throughout 2001-2002, that Landsaw was manufacturing methamphetamine and intended to continue doing so; (4) the events in April 2002 leading to the controlled sale of the pseudoephedrine pills to Landsaw which resulted in his arrest; (5) Landsaw's purchase of the pseudoephedrine pills in April 2002 for the purpose of manufacturing methamphetamine; (6) that it is common for drug traffickers to conceal contraband, proceeds of drug sales, receipts of drug transactions, and paraphernalia for packaging, cutting, weighing and distributing drugs within or near their property; and (7) the officer's belief that controlled substances and paraphernalia used to manufacture, process, harvest, weigh, package, sell, store, transport, distribute, and convey methamphetamine could be found in Landsaw's residence.

Based on the above information, the magistrate reasonably inferred that Landsaw was involved in ongoing and continuous manufacture of

methamphetamine. Landsaw argues that the information in the affidavit was stale because part of the affidavit tracks his activities as far back as July 2001. Mere passage of time, however, does not render information stale where drug activities are ongoing and continuous. *See United States v. Myers*, 106 F.3d 936, 939 (10th Cir. 1997). The totality of the information in the affidavit suggests that Landsaw was involved in the manufacture of methamphetamine from July 2001 until the day of his arrest.

In addition, the affidavit supports the inference that evidence of Landsaw's illegal activities would be found in his residence. Courts may rely on the opinion of police officers as to where contraband may be kept. *United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997). In this case, the officer noted that controlled substances and paraphernalia necessary to manufacture and distribute methamphetamine could be found at Landsaw's residence. In addition, there was a controlled sale of pseudoephedrine to Landsaw at his home on the evening that the warrant was issued. Both these facts support an inference that evidence of methamphetamine manufacture and distribution would be found at Landsaw's residence. The affidavit therefore provided probable cause for a warrant to search Landsaw's residence.

Moreover, the affidavit would have provided probable cause for the warrant even if it had included the information about the pills recovered from Landsaw's

car.  A warrant is valid if the affidavit still gives rise to probable cause when the omitted information is included in it.  *See Colonna*, 2004 WL 233297 at \*2; *Stewart v. Donges*, 915 F.2d 572, 583 n.13 (10th Cir. 1990).  The affidavit sought a warrant to search for:  (1) "[c]ontrolled substances and paraphernalia used to . . . manufacture . . . weigh, package, sell, store, transport, [or] distribute . . . any controlled substance;" (2) "methamphetamine . . . ; chemicals, compounds and substances used in the manufacture of methamphetamine . . . ; laboratory equipment, apparatus and glassware; documents, recipes, notes . . . ; records of drug production, activities and confederates; records of drug proceeds; and weapons."  The validity of the warrant did not depend on the presence of the pseudoephedrine pills at Landsaw's residence because there was probable cause to search for *other* evidence of manufacture and distribution of methamphetamine.  Because the affidavit, even with the omission included, would still provide a substantial basis for concluding that probable cause existed, the evidence seized from Landsaw's residence need not be suppressed.

## IV. CONCLUSION

For the foregoing reasons, this court **AFFIRMS** the district court's denial

of Landsaw's suppression motions and **AFFIRMS** his conviction.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge