F I L E D
United States Court of Appeals
Tenth Circuit

January 18, 2006

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

ION MINDRECI,

     Defendant-Appellant.

No. 05-3087

(D. Kan)
(D.C. No. 04-CR-20067-01-JWL)

**ORDER AND JUDGMENT**[*]

Before **KELLY, BALDOCK**, and **MURPHY**, Circuit Judges.

Defendant was charged in Minnesota state court with fleeing a peace officer, misdemeanor assault, obstructing arrest, expired registration, and no insurance. Defendant appeared for several hearings prior to trial. Defendant's last appearance in state court was on September 11, 2001, the day he was scheduled for trial. Due to the terrorist attacks, the judge postponed the trial until November 6, 2001. The court gave Defendant verbal notice of the November 6th trial date. Several days later the court set a pretrial hearing for October 23, 2001. The court and the

---

[*] This order and judgement is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

prosecutor sent Defendant several notices regarding the October hearing. The notices were returned to the sender. Some of the returned notices contained the following handwritten notation: "Refusal for cause without dishonor and without recourse to me." Defendant failed to appear for the October hearing and the November trial. Warrants were issued for his arrest.

In May 2004, police officers arrived at an apartment complex in Olathe, Kansas to execute an outstanding arrest warrant for an individual named Michael Strain. Defendant was with Strain when police arrested Strain in the parking lot of the apartment complex. The officers detained Defendant but released him when they did not locate any outstanding warrants. Michelle Knight, another resident in the apartment complex, observed Defendant and Strain's encounter with the police. Approximately ten minutes after the police left with Strain, she witnessed Defendant hurriedly carrying several items from his apartment to a nearby garage. The next day, Knight contacted the FBI and described what she had witnessed. She told FBI Agent Cudmore she saw Defendant carrying a long object covered by an orange sheath. She assumed the object was a shotgun because of its shape and the manner in which Defendant was holding it. She also reported that on two additional trips to the garage, Defendant carried several black boxes about the size of shoe boxes and a medium size cardboard box.

Based on this information, Agent Cudmore drafted an affidavit and submitted

it to a magistrate judge.  The affidavit included the following information:

> [T]he neighbor observed Mindreci exit his apartment carrying a shotgun and a cardboard box containing an unknown number of smaller black boxes.  The neighbor observed Mindreci holding the shotgun to his waist with the barrel pointed upward.  The neighbor further described the shotgun as being "long" and its barrel as being partially covered with "an orange colored sheet."  The neighbor observed Mindreci, upon leaving his apartment, as "making haste" and "feverishly" carrying the shotgun and cardboard box to a nearby garage . . . .  The neighbor then observed Mindreci making two additional trips from his apartment to the aforesaid garage.  The trips were also characterized, by the neighbor, as "hasty" and also involved Mindreci carrying cardboard boxes containing an unknown number of smaller black boxes.  Such descriptions are consistent with either ammunition boxes and/or storage containers for handguns.

The magistrate judge issued a search warrant based on the affidavit.  During the execution of the search warrant, the FBI located seven firearms in Defendant's garage including a 7.62 x 30 mm SKS rifle; a 9mm Intratec; a .357 Smith &Wesson revolver; a .38 caliber Smith & Wesson revolver; a .22 caliber Sturm, Ruger and Co. rifle; a 12 gauge Savage shotgun; and a Turkish Mauser Rifle.  At least two of the handguns were found in black gun boxes,[1] and the SKS rifle was partially covered with an orange hunting vest.  Police also found ammunition in the garage and in Defendant's apartment.  Defendant was charged with being a fugitive in possession of firearms in violation of 18 U.S.C. § 922(g)(2).

---

[1] Defendant asserts that one of the gun cases was maroon, not black.  Nothing in the record on appeal supports his claim, and both the Government's brief and the trial court's order state three black cases containing handguns were found in the garage.

Prior to trial, Defendant filed a motion to suppress evidence, claiming the affidavit in support of the search warrant contained false or reckless statements in violation of Franks v. Delaware, 438 U.S. 154 (1978). The court held a Franks hearing and afterward issued an order denying Defendant's motion to suppress. The case proceeded to trial where a jury convicted Defendant of being a fugitive in possession of firearms. The jury specifically found Defendant possessed all seven firearms seized in the garage. After trial, Defendant filed a Rule 29 motion for judgment of acquittal. See Fed. R. Crim. P. 29. Defendant argued insufficient evidence of a nexus between himself and the firearms because his wife and Strain had access to the garage. The court found insufficient evidence to link Defendant to the 12 gauge Savage shotgun; the Turkish Mauser Rifle; and the .22 caliber Sturm, Ruger and Co. rifle, and therefore, granted Defendant's motion as to those weapons. The court denied Defendant's motion as to the SKS rifle and the handguns (9 mm Intratec, .357 Smith & Wesson revolver, .38 caliber Smith & Wesson revolver) reasoning that Ms. Knight's observations sufficiently proved a nexus between Defendant and the guns.

I.

Defendant first challenges the district court's denial of his motion to suppress, arguing no probable cause existed to issue the search warrant because Agent Cudmore's affidavit contained information that was intentionally false or in reckless

4

disregard for the truth. In reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the district court's factual findings unless they are clearly erroneous. United States v. Higgins, 282 F.3d 1261, 1269 (10th Cir. 2002). We review the ultimate determination of reasonableness under the Fourth Amendment de novo. Id.

"It is a violation of the Fourth Amendment for an affiant to knowingly and intentionally, or with reckless disregard for the truth, make a false statement in an affidavit." United States v. Basham, 268 F.3d 1199, 1204 (10th Cir. 2001) (citing Franks, 438 U.S. at 171-72). Where a false statement is made in an affidavit for a search warrant, the search warrant must be voided only if the affidavit's remaining content is insufficient to establish probable cause. Franks, 438 U.S. at 171-72. In determining whether probable cause supports a search warrant, we review the sufficiency of the underlying affidavit by looking at the totality of the circumstances and ensuring " the magistrate had a substantial basis for concluding that probable cause existed." United States v. Tisdale, 248 F.3d 964, 970 (10th Cir. 2001) (internal citations and quotations omitted). Probable cause to issue a search warrant exists only when the supporting affidavit sets forth facts that lead a prudent person to believe a fair probability exists that contraband or evidence of a crime will be found in a particular place. See United States v. Wicks, 995 F.2d 964, 972-73 (10th Cir. 1993).

The court held a <u>Franks</u> hearing where Ms. Knight testified about information she relayed to Agent Cudmore. She stated she told Agent Cudmore she saw a covered object she believed to be a shotgun because of its shape and because of the manner in which Defendant carried it. She maintained she never told Agent Cudmore she actually saw the shotgun. She also testified she saw a long object covered in a "sheath" not a "sheet." Ms. Knight noted she had difficultly explaining what she saw because she was not familiar with guns. Nevertheless, she maintained she believed Defendant was carrying a shotgun. She also explained she saw Defendant making two additional trips to the garage. On one trip he carried a cardboard box, and on the next trip he carried several black boxes. Agent Cudmore also testified at the hearing. He stated Ms. Knight told him she saw Defendant carrying a shotgun, "like the kind you see on T.V." Agent Cudmore admitted Ms. Knight did not use technical terms like "barrel," but instead used descriptive words like "long part" in describing the barrel.

The district court concluded Agent Cudmore's representation in the affidavit that Defendant carried a "cardboard box containing an unknown number of smaller black boxes" was either intentionally false or in reckless disregard of the truth. The court noted Ms. Knight testified she could not see the contents of the cardboard box, and Agent Cudmore could not have drawn such a conclusion based on the information Ms. Knight provided. As required by <u>Franks</u>, the court did not use the

6

information in its probable cause analysis. As to Agent Cudmore's representations concerning the shotgun, the court determined that the affidavit included Agent Cudmore's conclusions based on Ms. Knight's statement. The court reasoned that while it would have been better to include only the facts the witness presented, Agent Cudmore did not intend to "embellish upon the information provided by Ms. Knight," but instead, used his experience as a law enforcement officer to clarify Ms. Knight's statements. The court noted the discrepancies between Ms. Knight's statements regarding the shotgun and the affidavit could be attributed to Ms. Knight's difficulty in describing what she saw.

Defendant asserts the district court erred in crediting Agent Cudmore's representations in the affidavit regarding the shotgun because Ms. Knight's testimony conflicted with the information in the affidavit and with Agent Cudmore's testimony. As noted above, at the Franks hearing Ms. Knight maintained she did not tell Agent Cudmore she saw a shotgun, but instead, testified she saw what she assumed was a shotgun. Agent Cudmore, however, testified Ms. Knight told him she saw a shotgun, "like the kind on T.V." On appeal, our role is not to reevaluate the facts, and "'where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" United States v. Colonna, 360 F.3d 1169, 1175 (10th Cir. 2004) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573 (1985)). Moreover, in a motion to suppress, "'the credibility of witnesses, the

7

weight to be given to evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court.'" Id. (quoting Higgins, 282 F.3d at 1269).

Here, the court obviously found Agent Cudmore's testimony credible when it determined he did not intend to embellish the facts provided by Ms. Knight regarding the shotgun. The district court noted that while Ms. Knight may not have specifically said she saw a shotgun or part of a shotgun, she was "unwavering in her belief that she had seen the defendant carrying what she believed was a gun." We find no clear error in the district court's decision to credit Agent Cudmore's testimony. Accordingly, we affirm the district court's conclusion that Agent Cudmore's representations in the affidavit regarding the shotgun were not intentionally false or in reckless disregard for the truth

Defendant also argues the district court erred because it could not have found Agent Cudmore's representations credible as to the shotgun while simultaneously finding his representations about the cardboard box were either intentionally false or in reckless disregard of the truth. This argument is foreclosed by our previous decision in Colonna where we found no support for the proposition that if the district court finds one or more false statements in a warrant, than all other statements must be deemed false as well. 360 F.3d at 1175. In fact, we noted such a proposition would be at odds with Franks, "which permits reliance on a warrant affidavit 'when

8

[the] material that is the subject of the alleged falsity or reckless disregard is set to one side [and] there remains sufficient content in the warrant affidavit to support a finding of probable cause." Id. (quoting Franks, 438 U.S. at 171-72).

Having determined the district court properly considered information about the shotgun in the probable cause analysis, we now must consider whether the remaining information in the affidavit was sufficient for a finding of probable cause. In weighing the totality of the circumstances, we find the district court correctly concluded probable cause supported issuance of the search warrant. Ms. Knight observed Defendant, approximately ten minutes after his companion was arrested, making several trips from his apartment to a nearby garage. Defendant's demeanor was described as "feverish" or "hasty. " On one such trip he carried a long item Ms. Knight believed was a shotgun. Also, the affidavit noted Defendant was a known associate of Mr. Strain who had a conviction for being in possession of a pipe bomb and was found to be in possession of over 100 firearms. This information would lead a prudent person to believe contraband or evidence of a crime would be found in Defendant's garage or his home. See Wicks, 995 F.2d at 972-73. Therefore, we find no error in the district court's probable cause determination.

## II.

Defendant also argues the evidence was insufficient to support the jury's guilty verdict. Sufficiency of the evidence is a legal issue we review de novo. United

States v. Lewis, 240 F.3d 866, 870 (10th Cir. 2001). On appeal, we "ask only whether taking the evidence . . . together with the reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Hanzlicek, 187 F.3d 1228, 1239 (10th Cir. 1999). The jury convicted Defendant of being a fugitive from justice in possession of a firearm in violation of 18 U.S.C. § 922(g)(2). Defendant alleges the Government did not prove he fled Minnesota with the specific intent to avoid prosecution–an essential element of the crime.

A fugitive from justice is defined as "any person who has fled from any state to avoid prosecution for a crime or to avoid giving testimony in any criminal proceeding." 18 U.S.C. § 921(a)(15). At trial, the evidence showed Defendant was well aware of the charges pending against him in Minnesota. He had appeared for several hearings and appeared for the September 11, 2001 trial. The court told Defendant in person his trial was rescheduled for November 6th, and several notices were sent regarding the October 23rd hearing. Some of the notices were returned in different envelopes than those in which they had been sent in, and the words: "Refusal for cause without dishonor and without recourse to me" were written across the notices. At least one such notice was returned in an envelope with Defendant's return address in the top left corner of the envelope. Although when Defendant left Minnesota is unclear, we conclude the jury could have reasonably inferred from this

evidence that Defendant left Minnesota with the intent to avoid prosecution for the pending charges. See United States v. Magleby, 241 F.3d 1306, 1312 (10th Cir. 2001) ("In making its determination regarding a defendant's intent, a jury is permitted to draw inferences of subjective intent from a defendant's objective acts.") (internal citations and quotations omitted); see also United States v. Rolle, 2001 WL 1141390, at *2 (10th Cir. September 27, 2001) (unpublished) (finding sufficient evidence for conviction under 18 U.S.C. § 922 (g)(2) where defendant failed to appear on a charge of driving under the influence in Montana, was aware there was a warrant for his arrest, and was subsequently found in Wyoming).

## III.

Defendant lastly argues the district court erred in finding a nexus between him and three handguns. Defendant argues insufficient evidence exists to show a nexus between himself and the handguns because the guns were found in a garage he shared with his wife and Mr. Strain. Specifically, Defendant argues the government failed to present evidence that ruled out Strain or his wife as the rightful possessors of the three handguns. Contrary to Defendant's argument, nothing in our case law requires the government to rule out joint occupants as possessors, instead, the government must show defendant had access to the firearms and knowledge of the firearms.

"Possession" can be either actual or constructive under § 922(g)(1). United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994). A person has constructive

11

possession when he or she "knowingly holds ownership, dominion, or control over the object and the premises where it is found." Id. United States v. Lazcano-Villalobos, 175 F.3d 838, 843 (10th Cir. 1999). Knowledge, dominion, and control are properly inferred if the defendant has "exclusive possession of the premises." United States v. Avery, 295 F.3d 1158, 1177 (10th Cir. 2002) (quoting Mills, 29 F.3d at 549). If more than one person occupies the premises, however, no such inference is allowed. "In cases of joint occupancy, where the government seeks to prove constructive possession by circumstantial evidence, it must present evidence to show some connection or nexus between the defendant and the firearm or other contraband." Mills, 29 F.3d at 549. Furthermore, in order to sustain a conviction based on constructive possession in joint occupancy cases, the government must show "evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband." United States v. Hien Van Tieu, 279 F.3d 917, 922 (10th Cir. 2002) (quoting United States v. Heckard, 238 F.3d 1222, 1228 (10th Cir. 2001)). Thus, in the joint occupancy context, "knowledge and access are required to prove that the defendant knowingly held the power to exercise dominion and control over the firearm." Colonna, 360 F.3d at 1179 (citing United States v. Gorman, 312 F.3d 1159, 1164 (10th Cir. 2002)).

In ruling on Defendant's Rule 29 motion for acquittal, the district court found sufficient nexus between Defendant and the handguns noting Defendant had access

to the garage where the guns were found, and Ms. Knight's eye witness testimony linked Defendant to the guns. As the district court noted, Defendant was seen carrying "several black boxes, consistent with handgun cases to the garage."[2] One day after Defendant was seen carrying the boxes, three boxes containing the handguns were found in the garage. A careful review of the record shows that these were the only small dark colored boxes found in the garage. Viewing this evidence in the light most favorable to the government, we find these facts support an inference that Defendant had "knowledge" of and "access" to the firearms, the two requirements for a finding of possession in the joint occupancy context. Accordingly, there was sufficient evidence for a reasonable jury to find Defendant guilty of possessing the three handguns.

---

[2] Defendant claims the physical characteristics of the evidence conflict with Ms. Knight's testimony. Defendant cites several trial exhibits in arguing one of the handgun cases was maroon, not black, and the boxes found in the garage were not shaped like shoe boxes. We have no way to verify if one of the gun cases was maroon or the shape of the boxes because Defendant failed to designate as part of the record the photographic evidence he refers to in his brief. See 10th Cir. R. 10.3 (D)(4) ("[T]rial exhibits . . . must be included [in the record on appeal] when they are relevant to an issue raised on appeal and are referred to in the brief."). Even assuming Defendant's claim that one of the gun cases was maroon and boxes were flatter and wider than shoe boxes, we find no error in the district court's determination that a sufficient nexus existed between Defendant and the handguns. Maroon and black are both dark colors that could easily be mistaken for each other at a distance and even if we accept Defendant's description of the boxes, the boxes are at least relatively the size and shape (rectangular) as a shoe box.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge