HARTZ, Circuit Judge.
The district court held that police officers lacked adequate grounds to conduct a no-knock entry of Defendant’s home to execute a search warrant, and suppressed all evidence obtained during the search. The Government appeals. We exercise jurisdiction under 18 U.S.C. § 3731 and reverse.
“In reviewing a district court’s ruling on a motion to suppress evidence, we view the evidence in the light most favorable to the prevailing party and accept the district court’s findings of fact unless they are clearly erroneous.” United States v. Oliver, 363 F.3d 1061, 1065 (10th Cir.2004) (internal quotation marks omitted). “The ultimate question of whether a search and seizure was reasonable under the Fourth Amendment is a question of law that we review de novo.” Id. (internal quotation marks omitted).
I. BACKGROUND
The facts in this case are largely undisputed. On December 3, 2002, Officer Bruce Voigt, a narcotics officer with the Topeka Police Department, obtained from the district court of Shawnee County, Kansas, a warrant to search Defendant’s home for methamphetamine and items associated with the sale or use of methamphetamine, including weapons. The affidavit in support of the warrant stated that a reliable informant had reported seeing Defendant sell methamphetamine at least 15 times in the past month. According to the informant, Defendant’s customers would contact him on his cell phone and Defendant would then deliver the methamphetamine to either the customer’s residence or another location. The informant also said that Defendant commonly left the *1211 methamphetamine in the glove compartment of his car, even when he was at home. The informant explained that Defendant was on federal parole and did not want to get caught with the methamphetamine in his house during an in-home visit by his parole officer.
Included in the affidavit was a summary of Defendant’s criminal record, which Officer Voigt had gathered from a national computer database. Defendant had a 1990 conviction for felony auto theft and a 1997 conviction for marijuana possession. In 1998 and 1999 Defendant had five other arrests: (1) for domestic battery, obstruction, and terroristic threat; (2) for domestic battery, obstruction, possession of drug paraphernalia, and battery on a law-enforcement officer; (3) for domestic battery and unlawful restraint; (4) for domestic battery; and (5) for possession of methamphetamine, possession of marijuana, possession of drug paraphernalia, and traffic violations. In 2001 Defendant was convicted on a federal charge of felon in possession of a firearm; he was sentenced to 18 months’ imprisonment and two years’ supervised release. At the time this search warrant was issued, Defendant had been on supervised release for a little over two months.
As Defendant points out, Voigt did not investigate any of the facts surrounding these offenses, nor did he contact Defendant’s parole officer for additional information. Also, at the time of the search the police had no specific information that Defendant possessed a firearm or booby trapped his residence. Nor did they have any information about what was inside the house.
At 1:22 a.m. on December 5, 2002, an eight-member search team led by Officer Voigt executed the search warrant. As the team approached Defendant’s residence, they noticed a light on inside but did not attempt to determine what was going on in the house. Without knocking, they'executed the search warrant by forcing the front door with a battering ram. Once inside, they announced their presence and ordered everyone to the ground.
In the house the officers found 18 grams of methamphetamine but no firearms or other weapons. Defendant was indicted for possession with intent to distribute 18 grams of methamphetamine and conspiracy to possess methamphetamine with intent to distribute it.
At the suppression hearing Voigt testified that he preferred to “do a knock and announce entry on every search warrant we possibly can.” App. at 68. Here, however, there were several reasons for the tactical decision not to knock and announce. First, there was Defendant’s criminal history. Voigt testified:
Going back over his- past arrest record and convictions, he shows the potential for violence. And not only that, but his last arrest was for the federal gun charge. We also took in consideration during the raid briefing that he had just been released in September of this year, and less than two and a half months later we’re doing a search warrant at his residence for selling methamphetamine and marijuana. To us, that shows a complete disregard for laws, or a person who is — possibly has the potential of having violence still.
Id. at 50. In addition, Voigt knew, based on his 10 years of experience as a narcotics officer, that firearms were tools of the drug trade. Moreover, he was concerned because of the lack of police knowledge of the inside of the residence. He testified that this lack of intelligence “itself is a dangerous situation because you don’t know what to expect.” Id. at 68.
The search team was also concerned about Defendant’s destroying evidence. Voigt .explained that this concern was *1212 based on the informant’s statement that Defendant was on federal parole and did not want to be caught with methamphetamine in his house during a visit by his parole officer.
II. DISCUSSION
The United States Supreme Court has held that the “Fourth Amendment incorporates the common law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry.” Richards v. Wisconsin, 520 U.S. 385, 387, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). But “the flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests.” Id. (internal quotation marks omitted). “[T]he knock-and-announce requirement [can] give way ‘under circumstances presenting a threat of physical violence,’ or ‘where police officers have reason to believe that evidence would likely be destroyed if advance notice were given.’ ” Id. at 391, 117 S.Ct. 1416 (quoting Wilson v. Arkansas, 514 U.S. 927, 936, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995)).
These justifications, however, must relate to the specific circumstances confronting the officers. Richards held that the Fourth Amendment did not allow Wisconsin’s categorical authorization of no-knock entries in executing search warrants for felony-drug investigations. Id. at 387-88, 117 S.Ct. 1416. Acknowledging that such investigations frequently involve a threat of violence and the likelihood of destruction of evidence, id. at 391, 394, 117 S.Ct. 1416, the Court said that Wisconsin’s blanket exception nevertheless improperly removed “from the neutral scrutiny of a reviewing court the reasonableness of the police decision not to knock and announce in a particular case.” Id. at 394, 117 S.Ct. 1416. The Court gave two reasons for rejecting an exception “based on the ‘culture’ surrounding a general category of criminal behavior.” Id. at 392, 117 S.Ct. 1416. One was that it would justify unnecessary no-knock entries:
First, the [Wisconsin] exception contains considerable overgeneralization. For example, while drug investigation frequently does pose special risks to officer safety and the preservation of evidence, not every drug investigation will pose these risks to a substantial degree. For example, a search could be conducted at a time when the only individuals present in a residence have no connection with the drug activity and thus will be unlikely to threaten officers or destroy evidence. Or the police could know that the drugs being searched for were of a type or in a location that made them impossible to destroy quickly. In those situations, the asserted governmental interests in preserving evidence and maintaining safety may not outweigh the individual privacy interests intruded upon by a no-knock entry. Wisconsin’s blanket rule impermissibly insulates these cases from judicial review.
Id. at 393, 117 S.Ct. 1416. The other reason was that such blanket exceptions could eviscerate the knock-and-announce requirement:
A second difficulty with permitting a criminal-category exception to the knock-and-announce requirement is that the reasons for creating an exception in one category can, relatively easily, be applied to others. Armed bank robbers, for example, are, by definition, likely to have weapons, and the fruits of their crime may be destroyed without too much difficulty. If a per se exception were allowed for each category of criminal investigation that included a considerable — albeit hypothetical — risk *1213 of danger to officers or destruction of evidence, the knock-and-announce element of the Fourth Amendment’s reasonableness requirement would be meaningless.
Id. at 393-94, 117 S.Ct. 1416.
Thus, .a reviewing court must “determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement.” Id. at 394, 117 S.Ct. 1416 (emphasis added). “In order to justify a ‘no-knock’ entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.” Id. “This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged.” Id. at 394-95, 117 S.Ct. 1416. No stricter standard is required when the entry involves destruction of property. See United States v. Ramirez, 523 U.S. 65, 69-70, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998); United States v. Banks, 540 U.S. 31, 41-42, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003).
We should not be quick to second-guess the decision to effect a no-knock entry. “In reviewing a challenge to the no-knock ... execution of a search warrant, we review the execution' from the perspective of reasonable officers who aré legitimately concerned not only with doing their job, but with their own safety.” United States v. Colonna, 360 F.3d 1169, 1176 (10th Cir.2004). As we stated in United States v. Basham, 268 F.8d 1199 (10th Cir.2001), “ ‘[I]t is generally left to the discretion of the executing officers to determine, the details of how best to proceed with the performance of a search authorized by warrant, subject of course to the general Fourth Amendment protection against unreasonable searches and seizures.’ ” Id. at 1203 (quoting Dalia v. United States, 441 U.S. 238, 257, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979)) (internal quotation marks omitted).
The Government urges that the undisputed facts in this case establish that the police had “a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous,” Richards, 520 U.S. at 394, 117 S.Ct. 1416, thus excusing the no-knock entry. We agree.
We recognize that the information that Defendant was dealing methamphetamine, combined with Voigt’s knowledge that firearms are tools of the drug trade, would not alone be sufficient to support an exception. See Richards, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615. Nevertheless, that the police are investigating a felony-drug case is certainly relevant to the reasonableness of the entry. Indeed, when the Supreme Court explained in Richards why it rejected Wisconsin’s blanket exception to the knock-and-announce requirement for such cases as “containing] considerable over-generalization,” id. at 393, 117 S.Ct. 1416, it focused on the possibility of unusual circumstances being present, such as the absence of the suspects from the premises, or the drugs being “of a type or in a location that made them impossible to destroy quickly.” Id.
On occasion, a suspect’s significant criminal history of violence may provide the necessary additional specific information justifying a no-knock entry. In Colonna we upheld the no-knock execution of a search warrant of the defendant’s. home for drugs. 360 F.3d at 1172. The affidavit supporting the warrant catalogued the defendant’s criminal history. He had been arrested 24 times and been convicted of two felonies. Among the arrests were ones for “strong arm robbery, aggravated *1214 assault, assault on a police officer, resisting arrest, aggravated robbery with a firearm, failure to stop for a police officer, and terroristic threats.” Id. at 1176. In addition, the affidavit stated that the defendant “had been very aggressive with police officers in the past, and has even hit, punched, or otherwise attacked certain officers.” Id. (internal quotation marks omitted). It also noted that children had been observed playing in the area during the day, id., which explains in part why the warrant was executed at 3:00 a.m., id. at 1173. Although the affidavit further alleged that the defendant had bragged to an officer about owning a handgun, that allegation was not considered because the trial court found it to be a deliberate falsehood. Id. at 1173-74. Thus, the only justification for the no-knock entry, beyond the usual concerns in felony-drug investigations, was the defendant’s criminal history. (The opinion mentions “the expressed fear of a concerned citizen that Mr. Colonna would retaliate violently,” id. at 1176; but there is no elaboration on the underlying basis of the fear, which may have been the same evidence supporting the officers’ fears.)
In the case before us the suspect’s criminal history likewise constitutes sufficient additional information to justify the no-kno.ck entry. Defendant’s four arrests for domestic battery and terroristic threat indicated a volatile, violent disposition; and the arrest for battery on a law-enforcement officer further indicated that he did not have substantially greater self-control when confronting police officers. He was a hardened criminal; he had two felony convictions and apparently started committing new felonies almost immediately upon his release from prison two months before the search at issue. And he was sufficiently attracted to guns that he had possessed one after his first felony conviction, despite the severe consequences faced by a felon found in possession of a firearm. The Supreme Court has said that the “showing [that knocking and announcing would be dangerous] is not high.” Richards, 520 U.S. at 394, 117 S.Ct. 1416. In our view, the information about Defendant was a sufficient showing to permit the no-knock entry.
We recognize that the threat of danger may have been greater in some of our decisions upholding no-knock entries. Defendant cites in particular to United States v. Basham, 268 F.3d 1199 (10th Cir.2001); United States v. Gay, 240 F.3d 1222 (10th Cir.2001); United States v. Maden, 64 F.3d 1505 (10th Cir.1995), and United States v. Dahlman, 13 F.3d 1391 (10th Cir.1993). None of these decisions, however, purports to set a minimum threshold of justification for no-knock entries. Perhaps they do not compel a determination that the entry of Defendant’s home was lawful, but neither do they compel the inference that it was 'irolawful.
Finally, we address Defendant’s contention that the failure of the officers to seek a no-knock authorization when they obtained the search warrant, even though they knew at the time essentially all the information now being used to justify the no-knock entry, casts doubt on the sincerity of their belief in the need for such an entry. We are not persuaded.
To begin with, there is no constitutional requirement that the search warrant specify the type of entry permitted in its execution. As we observed in Basham, 268 F.3d 1199:
Basham first contends that the district court should have suppressed the evidence because the magistrate failed to inquire as to the means by which the warrant was to be executed. He argues that, in situations where a no-knock warrant is requested, the magistrate has an independent duty to inquire as to the means by which service.is to be-execut *1215 ed in order to protect public safety, including the safety of any minor children.
Basham presents no authority for this proposition. In Dalia v. United States, 441 U.S. 238, 256-59, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979), the United States Supreme Court rejected the contention that an order allowing a wire intercept violated the Fourth Amendment because it did not specify the means by which the intercept would be installed. The Court stated that “it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant, subject of course to the general Fourth Amendment protection ‘against unreasonable searches and seizures.”’ Id. at 257, 99 S.Ct. 1682. The Court reasoned that it is often impossible to anticipate what actions will be necessary in serving a warrant, and further noted that “[n]oth-ing in the decisions of this Court ... indicates that officers requesting a warrant would be constitutionally required to set forth the anticipated means for execution even in those cases where they know beforehand that unannounced or forced entry likely will be necessary.” Id., n. 19.
Basham, 268 F.3d at 1203-04 (emphasis added). A leading treatise reaches the same conclusion:
It would seem ... that the latter position [that police are never required to seek magistrate authorization for a no-knock entry] is correct, for it is supported by “a number of fundamental principles: 1) the rule of announcement is a requirement of the Fourth Amendment’s reasonableness' clause, not its warrant clause; 2) the validity of a no-knock execution of a search warrant is subject to after-the fact judicial review for constitutional reasonableness, which is determined by reference to the circumstances as they existed at the time of the entry; and 3) the manner in which a search warrant is executed is not subject to the requirements of the warrant clause and therefore does not require prior judicial authorization.”
2 Wayne R. LaFave, Search and Seizure, § 4.8(e), at 127 (3d ed. Supp.2004) (quoting State v. Henderson, 245 Wis.2d 345, 364, 629 N.W.2d 613, 621 (2001)).
Because the law imposed no requirement upon the officers to seek a no-knock warrant, there is nothing suspect in their failure to do so here. It follows that there is no ground for inferring from this failure that the officers must not have sincerely believed they had sufficient grounds for a no-knock entry. Moreover, we question whether the officers’ subjective beliefs are relevant to the validity of a no-knock entry. Cf. United States v. Maden, 64 F.3d 1505, 1507-09 (10th Cir.1995) (holding that the no-knock entry was lawful because it was objectively reasonable, despite the district court’s finding that the officers lacked a subjective belief that the defendant was potentially dangerous); see also Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (“ ‘[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer’s action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.’ ” (quoting Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978))); United States v. Callarman, 273 F.3d 1284, 1286 (10th Cir.2001) (“When determining whether an officer possessed a reasonable articulable suspicion, the subjective motivations of an arresting officer are irrelevant.”).
The absence of any warrant requirement for a no-knock entry also helps explain the meaning in this context of “exigent” or “emergency” circumstances, *1216 which we have sometimes indicated must be present to justify a no-knock entry. See United States v. Moore, 91 F.3d 96, 98 (10th Cir.1996); Maden, 64 F.3d at 1509 n. 2; United States v. Stewart, 867 F.2d 581, 584 (10th Cir.1989). Those terms are often used in justifying exceptions to the warrant requirement. In that context, circumstances are “exigent” when they require immediate action. When “exigent circumstances” are present, it is necessary to conduct the search or seizure promptly, or, say, the evidence sought will be removed or destroyed; so the courts recognize the authority of officers to proceed without first seeking a warrant. See Illinois v. McArthur, 531 U.S. 326, 331, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001); United States v. Rhiger, 315 F.3d 1283, 1288-91 (10th Cir.2003). But since there is no requirement that a no-knock entry be authorized by a warrant, our use of the terms “exigent” or “emergency” in this context does not refer to the need to effect a no-knock entry before the officers can obtain a warrant authorizing the manner of entry. Rather, it simply refers to the need to employ such an entry because of the threat of violence or destruction of evidence if the officers knock and announce their presence before entry. Obviously, that type of circumstance can be known long before the actual entry and still remain “exigent.” See United States v. Beckford, 962 F.Supp. 767, 778-79 (E.D.Va.1997). On occasion, perhaps officers can avoid the risks of violence or lost evidence if they know of those risks sufficiently far in advance for them to take measures less intrusive than those actually employed, and their failure to do so may undermine the justification for the actual manner of entry. See Stewart, 867 F.2d at 584-85 (use of battering ram and stun grenade in effecting entry not justified by scant evidence of danger). But Defendant has not suggested how that could have been accomplished here.
III. CONCLUSION
For the foregoing reasons we REVERSE the district court’s grant of Defendant’s motion to suppress and REMAND for further proceedings consistent with this opinion.