**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 21, 2005**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

LAWRENCE D. NIELSON,

      Defendant-Appellee.

No. 04-3424

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 04-CR-40068-01-RDR)**

---

Patty Merkamp Stemler, Chief, Criminal Appellate Section, United States Department of Justice, Washington D.C. (Eric F. Melgren, United States Attorney, District of Kansas and Gregory G. Hough, Assistant United States Attorney, District of Kansas, with her on the briefs) for Plaintiff-Appellant.

Kirk C. Redmond, Federal Public Defender, Topeka, Kansas (David J. Phillips, Federal Public Defender and Ronald E. Wurtz, Assistant Federal Public Defender for the District of Kansas, Topeka, Kansas on the brief) for Defendant-Appellee.

---

Before **SEYMOUR**, **HOLLOWAY,** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

We must decide whether law enforcement officers violated Lawrence D. Nielson's Fourth Amendment rights when they executed a search warrant that authorized them to enter his home without complying with the Fourth Amendment's knock and announce requirement. Finding under the totality of the circumstances that officers were obligated to knock and announce prior to entering, the district court suppressed evidence seized during the search. Because we take the district court's view that law enforcement officers failed to demonstrate that they had an objectively reasonable suspicion that knocking and announcing would be dangerous or futile, we **AFFIRM**.

## I

Law enforcement officials received an anonymous Crime Stoppers report that a person named Danny Mills or Danny Nielson possessed an automatic weapon kept in the loft in his garage and possessed narcotics in a work bench in the garage. Detective Eric Coffman, who is with the Junction City/Geary County Drug Task Force, determined that Nielson resided at an address matching that given by the tip. Coffman determined that Nielson had previously been arrested in 1999 for possession of a firearm by a convicted felon and had pled no contest to misdemeanor possession of marijuana. Relying on the tip and the circumstances of the 1999 search, he sought a search warrant authorizing police officers to search the residence without complying with the Fourth Amendment's

"knock and announce" requirement. Finding that probable cause existed to support the search warrant with a "no-knock" exemption, a Geary County district judge signed the warrant granting authority to the police to search the home of Nielson and Caroline Vigil.

In executing the warrant the following morning at 4:45 a.m., police found Nielson, unclad, and Vigil, clad in a bathrobe, in a bedroom. A loaded .45 caliber handgun was found on the floor next to their bed, knives were on the night stand, and seven other firearms were recovered from a closet safe, including assault rifles. In the garage they found 25-millimeter military rounds, and an M21 artillery simulator. Detectives also seized small amounts of marijuana and smoking devices found in the garage workbench and bedroom. Both Nielson and Vigil were arrested.

In support of the application for a no-knock warrant, Detective Coffman provided an affidavit reciting three facts to establish probable cause for the search and to support reasonable suspicion for an exemption to the knock and announce requirement. First, police conducted a search of Nielson's home pursuant to a search warrant four years earlier. When executing the 1999 search, a loaded gun was found on top of a laundry basket outside a master bedroom, although both Nielson and Vigil were located between the kitchen and living room. That search uncovered five weapons and marijuana which resulted in Nielson being charged

with possession of a firearm by a convicted felon and with misdemeanor possession of marijuana. Second, police received a Crime Stoppers anonymous report in August 2003 that Nielson possessed an automatic weapon and narcotics which were located in the garage. Third, detectives searched Nielson's garbage which revealed marijuana seeds, and "five round cloth patches" which they believed to have been used to clean firearms. In his affidavit, Coffman therefore requested "a no-knock search warrant for officer's safety based on Mr. Nielson's past history of possessing firearms and the potential for violence."

Before the district court, Nielson sought to suppress the evidence seized pursuant to the search, arguing that executing the search at 4:45 a.m. without knocking and announcing violated his constitutional rights. At the suppression hearing, Detective Coffman testified that officers were concerned that Nielson and Vigil might attempt to arm themselves if police knocked and announced. Officers determined that the garage where the Crime Stoppers tip said an automatic weapon and marijuana were located was connected to the house, but they did not know if there was an interior passageway between the garage and the house. Regarding the search more than four years prior, detectives testified that placing a gun on a laundry basket was unusual, and speculated that Nielson had handled the gun shortly before police entered, though Nielson did not resist and did not threaten violence. Moreover, police noted that small amounts of

marijuana for personal use are easily destroyed by flushing. Police thus feared both violence and destruction of evidence.

After hearing this testimony, the district court concluded that it was clear that the officers were obligated to knock and announce before entering Nielson's home. The district court found that the facts presented to support reasonable suspicion fell far short of providing reasons to believe Nielson would be violent or attempt to destroy evidence when he had exhibited no prior violent behavior and when he had not attempted to destroy evidence during the 1999 search. Finding that Tenth Circuit precedent clearly established that Detective Coffman's information was insufficient to support a no-knock execution to the search warrant, the district court refused to apply the good faith doctrine under United States v. Leon, 468 U.S. 897 (1984), and granted Nielson's motion to suppress the evidence obtained during the search. The United States now appeals.

**II**

On appeal from a motion to suppress, we accept the district court's factual findings unless they are clearly erroneous. United States v. Moore, 91 F.3d 96, 97 (10th Cir. 1996). When reviewing factual findings in the totality of the circumstances, we view the evidence in the light most favorable to the prevailing party. Id. Because they are questions of law, we review de novo the reasonableness of a search and seizure under the Fourth Amendment, as well as

the district court's determinations with regard to exigent circumstances. United States v. Dahlman, 13 F.3d 1391, 1398 (10th Cir. 1993).

We must begin any examination of Fourth Amendment limitations on no-knock entries with two Supreme Court cases. The first, Wilson v. Arkansas, 514 U.S. 927 (1995), held that the common-law knock and announce principle forms part of the Fourth Amendment reasonableness inquiry. Tracing deep into the English Common law the history of the principle that a person's house is "his castle of defence and asylum," 3 W. Blackstone, Commentaries 288, the Supreme Court concluded that the prohibition against the sovereign's breaking down doors without first knocking and announcing was "woven quickly into the fabric of early American law." Id. at 932-933; see also, Miller v. United States, 357 U.S. 301, 313 (1958) ("The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application."). Not only is it part of our common law heritage, but because the reasonableness of a search under the Fourth Amendment may depend in part on the manner in which the search is executed, the Court reasoned: "[W]e have little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure." Wilson, 514 U.S. at 934. The Court was quick to note, however, that inquiry into the

reasonableness of an unannounced entry must be flexible.  Id. at 934 ("The Fourth

Amendment's flexible requirement of reasonableness should not be read to

mandate a rigid rule of announcement that ignores countervailing law

enforcement interests.").

In the second case, Richards v. Wisconsin, 520 U.S. 385, 394 (1997), the

Court struck down the Wisconsin Supreme Court's conclusion that the knock and

announce requirement did not apply to felony drug cases because as a category

they all involved a high risk of harm to police officers and a threat of disposal of

drugs.  Under the flexible approach announced in Wilson, the Court explained

that "the knock-and-announce requirement could give way under circumstances

presenting a threat of physical violence or where police officers have reason to

believe that evidence would likely be destroyed if advance notice were given."

Id. at 391 (quotation omitted).   Before law enforcement officers may enter a

dwelling without complying with the knock and announce requirement, they

"must have a reasonable suspicion that knocking and announcing their presence,

under the particular circumstances, would be dangerous or futile, or that it would

inhibit the effective investigation of the crime by, for example, allowing the

destruction of evidence."  Id. at 394.  However, an officer must have an

objectively reasonable belief, and may not rely on subjective factors or hunches.

See United States v. Maden, 64 F.3d 1505, 1509 (10th Cir. 1995); United States

- 7 -

v. Stewart, 867 F.2d 581, 584 (10th Cir. 1989) (examining "whether the officers, after considering the particular facts regarding the premises to be searched and the circumstances surrounding the execution of the warrant, could reasonably have decided that an urgent need existed for [a no-knock] entry into the premises").

When reviewing a district court's suppression ruling, we must "determine whether the facts and circumstances of the particular entry justified dispensing with the knock and announce requirement." Richards, 520 U.S. at 394. Because "[a] trial judge views the facts of a particular case in light of the distinctive features and events of the community," Ornelas v. United States, 517 U.S. 690, 699 (1996), we owe due deference to the district court's evaluation of the factual context in determining whether reasonable suspicion existed to justify a no-knock entry. Despite our deferential standard of review, the government urges that the totality of the circumstances demonstrates that the district court clearly erred in making its findings. The district court found:

> [T]here was a prior history of searching defendant's residence without violence or the destruction of evidence. When defendant's residence was searched in 1999, the officers knocked and announced before entering the house. Defendant and Caroline Vigil were awake when the search was conducted. Although they did not answer the door, there is no claim that they attempted to destroy evidence or that they threatened the safety of the officers. In addition, there is no evidence or indication that defendant or his girlfriend had acted violently or threatened violence toward officers or others since 1999. The only evidence referred to in the affidavit to support a no-knock entry for the safety of the officers is the anonymous tip that

defendant had automatic weapons in the loft of his garage approximately seven weeks before the search was conducted.

Slip op. at 8. Based on these findings, the district court concluded that this case was not close because no facts were alleged in the affidavit or existed in the totality of the circumstances to justify a no-knock entry. We cannot conclude that these factual findings are clearly erroneous.

Whether these facts are sufficient to support a determination with regard to dangerous or exigent circumstances is a legal question we review de novo. Dahlman, 13 F.3d at 1398. Search and seizure cases involve, by their very nature, fact-dependent and case-specific inquiries. Thus, our inquiry into whether exigent circumstances exist must rely on analogical reasoning from prior holdings and prior circumstances, as well as a close look at the particular circumstances law enforcement officers confronted in this case. Following the Supreme Court, our prior holdings have focused on the criminal history and past violent behavior of the defendant as well as the conduct under investigation with particular emphasis on trafficking in narcotics with possession of a firearm. See United States v. Ramirez, 523 U.S. 65, 68-69 (1998) (upholding a no-knock search when the defendant had escaped from police custody, having violently attempted to do so on previous occasions, and was believed to be hiding at a home suspected of having a "stash of guns"); United States v. Gay, 240 F.3d 1222 (10th Cir. 2001) (relying on information that defendant had jumped bail, had been involved in a

prior police shootout, and was armed at all times); United States v. King, 222 F.3d 1280 (10th Cir. 2000) (relying on information that defendant sold drugs, that he belonged to a gang, that he had previously displayed a willingness to use his gun, and that another drug dealer might be present in the house with a gun); United States v. Myers, 106 F.3d 936, 940 (10th Cir. 1997) (relying on knowledge that defendant had been convicted of possession of a firearm and a firebomb, had been involved in the firebombing of a police vehicle, had prior convictions for burglary, theft and drug trafficking, and was suspected of current drug trafficking activity); Dahlman, 13 F.3d at 1398 (relying on information that defendant "intended to shoot it out with police rather than be arrested."); cf. United States v. Geraldo, 271 F.3d 1112, 1118 (D.C. Cir. 2001) (noting agreement among circuits "that the presence of a firearm coupled with information such as a suspect's violent tendencies, criminal record, or specific violent threats is enough to create an exigency because the weapon might be used").

For example, in United States v. Colonna, 360 F.3d 1169, 1176 (10th Cir. 2004), we upheld a no-knock execution of a search warrant in an investigation of narcotics-trafficking when defendant had been arrested 24 times with charges including assault on a police officer, had been convicted of two felonies, and the affidavit supporting the warrant stated defendant had been aggressive with police officers in the past. More recently, our circuit overturned a district court's

suppression of evidence seized pursuant to a no-knock warrant when the defendant possessed firearms, was known to be dealing methamphetamine, and had been arrested four prior times for domestic battery and battery on a law-enforcement officer which we concluded "indicated a volatile, violent disposition." United States v. Musa, 401 F.3d 1208, 1214 (10th Cir. 2005). We found further support justifying the no-knock entry in the fact that children had been observed playing in the area. Id. at 1214.

None of the elements that have supported dispensing with the knock and announce requirement in our case law exist in the current factual circumstances. Our inquiry remains flexible, but because the Supreme Court "left to the lower courts the task of determining the circumstances under which an unannounced entry is reasonable under the Fourth Amendment," Ramirez, 523 U.S. at 70 (quotation omitted), we ordinarily expect the government to justify a no-knock entry in light of our case law. Although the standard for reasonable suspicion is not high, Richards, 520 U.S. at 395, requiring no more than a "particularized and objective basis," Ornelas, 517 U.S. at 696, for believing exigent circumstances exist, the police in this case fail to provide such a basis to believe that knocking and announcing their presence would have been dangerous or futile. See Moore, 91 F.3d at 98.

We find particularly notable in the present case the fact that law enforcement officers make no claim that Nielson was distributing narcotics or that he had engaged in any prior violent conduct. Detective Coffman explicitly testified to the fact that he had no information when executing the search warrant that either Vigil or Nielson had engaged in past acts of violence. Moreover, the prior search of Nielson's home resulted in no violence, and despite his silent refusal to answer the door, he apparently cooperated after the police entered. Although the police had evidence that a firearm was present, that fact by itself does not demonstrate an increased risk beyond that normally faced by law enforcement officers, especially where, as here, their information was that a firearm was in a loft in the garage, and they had no information leading them to believe that Nielson had interior access to the garage. Further reasons to believe that knocking and announcing police presence would be dangerous or futile, such as counter-surveillance activities, are also absent in this case. See United States v. Cline, 349 F.3d 1276, 1289-90 (10th Cir. 2003). Without a prior history of violence in interacting with police, without a record of prior convictions that indicate a predilection towards violence, without a suspicion that defendant was engaged in narcotics trafficking, or without any other exigent circumstances such as children playing nearby or evidence of counter-surveillance activities, we

cannot conclude that the police had sufficient justification in this case for a no-knock warrant.

Law enforcement officers may have perceived certain additional risks caused by the likelihood that Nielson possessed guns, at least in the garage, to which he may have had access. However, perception of an increased risk does not by itself establish the objective, reasonable suspicion that exigent circumstances exist. In response to the court's own questions, Detective Coffman testified that the belief that firearms are present is sufficient to justify a no-knock search.[1] Our precedent has made clear that the "mere statement that firearms are present, standing alone, is insufficient," Moore, 91 F.3d at 96; Jenkins, 175 F.3d at 1214 ("[T]he mere likelihood that drugs or weapons will be found in the searched premises alone will [not] support the reasonableness of a given waiting period."). To hold otherwise would risk running afoul of the Supreme Court's admonishment against "creating exceptions to the knock-and-announce rule based on the 'culture' surrounding a general category of criminal behavior." Richards, 520 U.S. at 392. Such a blanket approach was clearly rejected by the Court in Richards in favor of a case-by-case analysis, and we have similarly concluded that

---

[1] We find this statement troubling in light of our prior observations that "[o]ur concern is heightened because this court 'seems to be reviewing the actions of Kansas police executing 'knock and announce' warrants with some frequency.'" United States v. Jenkins, 175 F.3d 1208, 1215 (10th Cir. 1999) (quoting United States v. McCloud, 127 F.3d 1284, 1288 n.3 (10th Cir. 1997)).

to justify no-knock entries based on claims that officers executing narcotics search warrants always have increased risks would "expand the exigent circumstances exception to such an extent [that it] would completely swallow the rule." Moore, 91 F.3d at 98.

Although the potential presence of loaded weapons may heighten the risk to law enforcement officers, where no other evidence of potential violence or danger exists, we have made clear that such circumstances do not support reasonable suspicion that exigent circumstances justify dispensing with the requirement that police knock and announce their presence when executing a search warrant.[2]  The district court properly concluded that the police failed to demonstrate reasonable suspicion that in this particular circumstance knocking and announcing their presence would be dangerous or futile or would lead to the destruction of evidence.

### III

Nielson's Fourth Amendment rights were violated when the police failed to comply with their constitutional duty to knock and announce their presence. Nonetheless, the government argues that the officers' actions were conducted in

---

[2] "[I]f the knock and announce requirement is to remain the rule rather than the exception, we must still be able to tell the difference between the ordinary risks to officer safety in serving search warrants and the risks to officer safety in instances in which a no-knock entry is justified." Musa, 401 F.3d at 1219 (Henry, J. dissenting).

good faith. Because the remedy courts have fashioned for Fourth Amendment violations is harsh, requiring the exclusion of potentially reliable evidence of wrongdoing, we conduct a separate inquiry as to whether the exclusionary sanction is appropriate. Designed to provide a deterrent to police misconduct, the exclusionary rule is not mandated by the Fourth Amendment. See Leon, 468 U.S. at 906-907. Thus, the Court has created a good-faith exception to imposition of the exclusionary rule when law enforcement officers' reliance on a magistrate's warrant is objectively reasonable. Id. at 922-24.

Although the analysis in Leon specifically addressed whether the exclusionary sanction should be applied to warrants lacking probable cause to justify a search, the government argues that good faith excuses its failure to comply with the Fourth Amendment knock and announce requirement. See, e.g., United States v. Tisdale, 195 F.3d 70, 73 (2d Cir. 1999) (holding on Leon good-faith grounds that defendant was not entitled to suppression of evidence seized pursuant to a no-knock entry). Finding that the warrant application was so lacking in a particularized and objectively reasonable suspicion that knocking and announcing would be dangerous or futile, the district court denied the government's request to apply the good-faith exception to its Fourth Amendment violation. We review the district court's decision whether to apply the Leon

good-faith exception de novo.  United States v. Riccardi, 405 F.3d 852, 860 (10th Cir. 2005).

In determining whether to suppress evidence "our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."  Leon, 468 U.S. at 923, n.23.  In Leon the Court enumerated four general situations in which law enforcement officers who relied on an invalid warrant could not benefit from the good faith exception, one of which is relevant to the present case.  The Court provided that "a warrant may be so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."  Id. at 923.  Specifically regarding no-knock warrants, the Supreme Court has provided that "[w]hen a warrant applicant gives reasonable grounds to expect futility or to suspect that one or another such exigency already exists or will arise instantly upon knocking, a magistrate judge is acting within the Constitution to authorize a 'no-knock' entry."  United States v. Banks, 540 U.S. 31, 36 (2003).  Thus, if the warrant in the present case is so facially deficient with regard to whether reasonable suspicion that knocking and announcing police presence would be dangerous or futile, then the good-faith exception may not be applied.

In response to questions from the court below, Detective Coffman represented that the mere belief that firearms are present is sufficient to justify a warrant from a state judge excusing compliance with the Fourth Amendment's knock and announce requirement.[3] Although "[t]he practice of allowing magistrates to issue no-knock warrants seems entirely reasonable when sufficient cause to do so can be demonstrated ahead of time," Richards, 520 U.S. at 396 n.7, Detective Coffman's affidavit fails to allege that sufficient cause exists in this case to support a no-knock execution of the search warrant. Our holdings have established that evidence of the presence of firearms, without more, is insufficient to justify a no-knock entry, and so, necessarily the mere belief that firearms are present would be insufficient as well. See Moore, 91 F.3d at 98 ("[T]he mere fact that firearms were present was insufficient to demonstrate exigent circumstances."); Jenkins, 175 F.3d at 1214.

Officers must demonstrate that they have an objectively reasonable concern that exigent circumstances exist. See Stewart, 867 F.2d at 584-85 (suppressing evidence because no-knock entry not supported by objectively reasonable belief that exigent circumstances existed); see also, United States v. Bates, 84 F.3d 790 (6th Cir. 1996) (affirming the district court's suppression of evidence seized in

---

[3] It does not appear that Kansas provides statutory approval for no-knock warrants. See Estate of Fuentes v. Thomas, 107 F. Supp. 2d 1288, 1298 (D. Kan. 2000).

violation of the knock and announce requirement because belief that defendant was likely to be violent was not objectively reasonable). The warrant in this case is lacking in a sufficient indicia of reasonable suspicion that exigent circumstances exist as to Nielson's "potential for violence" or as to the threat posed by his "past history of possessing firearms."[4] As we have already discussed, the affidavit in support of the no-knock search warrant presented facts that established past possession of firearms and small amounts of marijuana, and present evidence of the same. Officers failed to present any evidence of past violent behavior that would indicate a potential for present violence or futility, or any other evidence that would provide a reason to believe Nielson or Vigil would be violent. In light of our clear precedent providing that mere allegations of the presence of a firearm are insufficient to support a no-knock entry, we cannot say that law enforcement officers' reliance on the state judge's authorization was

---

[4] We find instructive the Eighth Circuit's reasoning that the "good-faith exception is perfectly suited for cases . . . when the judge's decision was borderline." United States v. Scroggins, 361 F.3d 1075, 1084 (8th Cir. 2004). In that case, a "borderline" decision to authorize a no-knock entry was made pursuant to an affidavit that alleged that "the defendant was part of a large-scale drug-trafficking organization, that he had prior arrests for narcotics and weapons, that known drug dealers repeatedly visited the premises, and that officers had found a round from an assault rifle in his trash." Id. By comparison to these "borderline" averments, the district court in the present case could quite reasonably state, as it did, "we do not believe this is a close call."

objectively reasonable.  Therefore we conclude that law enforcement officers are not entitled to a good-faith exception to suppression of evidence in this case.

**IV**

Because we agree with the district court that the circumstances presented in this case did not excuse law enforcement officers from complying with the Fourth Amendment's knock and announce requirement, we **AFFIRM**.