F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**March 16, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JAMES DANIEL SECKMAN,

    Defendant - Appellant.

No. 05-7044
(D.C. No. 04-CR-90-P)
(E.D. Okla.)

**ORDER AND JUDGMENT***

Before **KELLY**, **McKAY**, and **LUCERO**, Circuit Judges.**

    Defendant-Appellant James Daniel Seckman entered a conditional plea of

guilty to manufacturing methamphetamine in violation of 21 U.S.C. § 841(a)(1),

and was sentenced to 115 months imprisonment and three years supervised

release. The district court denied his motion to suppress based upon the

recommendation of a magistrate judge. Our jurisdiction arises under 28 U.S.C.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

** After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

§ 1291 and we affirm.

The parties are familiar with the facts and we need not restate them here. The magistrate judge determined that Mr. Seckman was legally stopped for speeding and that a search of his motorcycle, including a camouflage bag attached thereto, was based upon probable cause. Inside the bag, 48 unopened boxes of pseudoephedrine tablets (60 mg. each) and four bottles of "Heet" gas line antifreeze were found. These items may be used in the manufacture of methamphetamine. On appeal, Mr. Seckman does not challenge this stop, seizure or search.

He does challenge the search of his home pursuant to a warrant obtained by the arresting officer. Initially, Mr. Seckman claimed that were the evidence from the motorcycle suppressed, the affidavit in support of the search warrant would be insufficient to establish probable cause. The magistrate judge having rejected that premise, the focus shifted to whether other information contained in the affidavit provided by state narcotics agents was obtained unlawfully and therefore should be excluded. That information was as follows:

> On 08/29/03 Agents from the Oklahoma Bureau of Narcotics located marijuana plants growing near SECKMAN'S residence and outbuildings. While at the residence retrieving the marijuana plants the Agents found items consistent with the clandestine manufacture of methamphetamine including HCL gas generators and two-layer liquids. The Agents also found a burn pile containing partially-burnt tincture of iodine containers, "Heet" brand gas line antifreeze containers, and camp fuel containers. A chemical odor the Agents

- 2 -

associated with the clandestine manufacture of methamphetamine was also present near the residence and outbuildings.

Aplt. App. tab 6, at unnumbered p. 3, ¶ 13. The magistrate judge was troubled by the officer's testimony that the marijuana plants were discovered some 50 to 100 yards from Mr. Seckman's residence during a fly-over by state narcotics agents. After they seized the plants, the agents approached Mr. Seckman's residence without a warrant and discovered the above items within the curtilage.

According to the magistrate judge, this testimony implicated whether the information in the above paragraph should be excluded from the probable cause determination because it was obtained unlawfully, i.e. without a warrant, or because the circumstances surrounding it were not fully disclosed in the affidavit. The magistrate judge thought it problematic as to whether the other information in the affidavit would provide probable cause to search Mr. Seckman's residence. The magistrate judge declined to answer these questions "because the parties did not address them adequately in their briefs or at the suppression hearing." Aplt. App. tab 3, at 13. Instead, it applied the good-faith exception in United States v. Leon, 468 U.S. 897 (1984), holding that the omission of the circumstances leading to the above paragraph was inadvertent and that an officer could reasonably believe the affidavit and resulting warrant were sufficient.

When reviewing the denial of a motion to suppress, we view the facts in the light most favorable to the government and review findings of fact for clear error.

United States v. Riccardi, 405 F.3d 852, 859 (10th Cir. 2005).  Our review of the application of the good-faith exception to the warrant requirement is de novo. United States v. Nielson, 415 F.3d 1195, 1203 (10th Cir. 2005).

A defendant challenging a search pursuant to a warrant has the burden of proof.  United States v. Carhee, 27 F.3d 1493, 1496 (10th Cir. 1994); United States v. Maestas, 2 F.3d 1485, 1491 (10th Cir. 1993).  In the context of a warrant that a defendant claims is invalid due to a deliberate falsehood or a reckless disregard for the truth, the rule is the same.  See Franks v. Delaware, 438 U.S. 154, 171 (1978); Maestas, 2 F.3d at 1491.  As was done here, it is possible to address the good faith exception before determining whether a warrant is deficient for lack of an affidavit establishing probable cause.  See Leon, 468 U.S. at 924-25.  But usually it is  difficult to assess the reasonableness of law enforcement action without specific facts analyzed against a backdrop of the Fourth Amendment. Moreover, such Fourth Amendment analysis is useful in developing the law.  See id. at 925; United States v. Danhauer, 229 F.3d 1002, 1005 (10th Cir. 2000).

We have serious reservations about whether Mr. Seckman met his burden of establishing that the affidavit in support of the warrant was deficient.  Although the magistrate judge determined that the incriminating evidence discussed in the warrant was within the curtilage of the defendant's home, he could not say

whether the narcotics agents were within the curtilage when they observed this evidence. As the proponent of a motion to suppress evidence obtained with a warrant, it was incumbent on Mr. Seckman to develop such facts.

Although the curtilage is entitled to Fourth Amendment protection, what constitutes the curtilage requires an analysis of "whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." Oliver v. United States, 466 U.S. 170, 180 (1984). Factors considered include (1) the proximity of the area to the house, (2) whether the area is included within an enclosure surrounding the home; (3) how the area is used; and (4) any steps taken by the resident to protect the area from observation. United States v. Dunn, 480 U.S. 294, 301 (1987). These factors help in determining the primary inquiry: "whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." Id.

If the narcotics agents made their observations from places where visitors could be expected to go, i.e. walkways, driveways or porches, or even open fields on private property, such vantage points are not within Fourth Amendment protection. United States v. Hatfield, 333 F.3d 1189, 1194-95, 1198-99 (10th Cir. 2003); Fulbright v. United States, 392 F.2d 432, 434-35 (10th Cir. 1968). On the other hand, if the agents made their observations from the curtilage, that would implicate the Fourth Amendment. Hatfield, 333 F.3d at 1198; Fullbright, 392

F.2d at 434-35.

The premise of Mr. Seckman's argument is that the affidavit in support of the warrant should have disclosed that the observations about his residence were the product of a Fourth Amendment violation, i.e. a warrantless entry onto the curtilage. The record in this case is inadequate to support that premise. Specifically, the appendices in this case contain the judgment, the affidavit for the search warrant, the disposition by the district court and report and recommendation of the magistrate judge and two pages of the transcript of the suppression hearing. Aplt. App. & Aplee. App. Mr. Seckman's brief quotes another page of the suppression hearing not contained in the appendices. Aplt. Br. at 6-7. Nowhere is the nuanced analysis that would be required to determine whether a valid Fourth Amendment claim exists concerning whether the agents' observations were made from a protected vantage point, let alone whether the warrant in this case should have disclosed fully the circumstances surrounding those observations. Though the officer in this case testified that the agents went to the house without a search warrant, that really does not resolve the issue. Aplt. Br. at 7.

We reject Mr. Seckman's argument that a reasonably well-trained officer would have known that the search was illegal despite the warrant, and that the material omission of the circumstances surrounding the observations of the agents

is tantamount to a false statement.  No indication exists in this record that the officer deliberately or recklessly misled the state court judge, or that the judge abdicated his duty.  Thus, we need not address the contention that without the agents' observations, the affidavit for the warrant lacked probable cause.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge