**F I L E D**

PUBLISH
**June 21, 2006**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

No. 05-3277

CHAD L. ESSER,

      Defendant-Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 04-CR-10235-MLB)

---

Brent I. Anderson, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with him on the brief), Wichita, Kansas, for Plaintiff-Appellee.

John K. Henderson, Jr., Assistant Federal Public Defender, Wichita, Kansas, for Defendant-Appellant.

---

Before **TACHA**, Chief Judge, **BALDOCK**, and **LUCERO**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

During the execution of a "no-knock" warrant, police officers discovered several firearms and a large amount of controlled substances in Defendant's apartment. Following denial of his motion to suppress, Defendant reserved his right to appeal by entering a conditional plea of guilty to possession of a firearm by a felon in violation of 18 U.S.C.

§ 922(g)(1) and possession of a non-registered short barrel rifle in violation of 26 U.S.C. § 5861(d). See Fed. R. Crim. P. 11(a)(2). On appeal, Defendant's argument is twofold. First, Defendant claims the court improperly placed the burden on him to show the "no-knock" warrant was invalid. Second, Defendant argues the "no-knock" warrant was invalid because, the state judge relied solely on the presence of firearms as the reason for issuing the warrant. We review these legal questions de novo and affirm. United States v. Zunie, 444 F.3d 1230, 1236 (10th Cir. 2006).

I.

On May 13, 2004, Defendant visited his pit bull at an animal shelter in Dodge City, Kansas. The city placed the animal in the shelter to await euthanization after it bit a child. During his visit to the shelter, staff reported Defendant demonstrated "really strange" and "scary" behavior, and he was acting "extremely violently angry." Later that night, the shelter was burglarized. The perpetrator forced the dogs' cages open with a pry bar. When the staff arrived the next morning, all the dogs remained in the shelter, albeit running loose, except for Defendant's pit bull. Also missing were a large amount of controlled substances, identified by the vet as being highly addictive and highly abused, and a box of Aloe Tough latex gloves with a white sticker and black ink writing on the box.

In the early hours of May 15, 2004, officers walked by Defendant's truck, which was parked outside his apartment, and noticed in plain view several pry bars in the bed of the truck and a box of Aloe Tough latex gloves matching those stolen from the animal shelter inside the cab of the truck. After observing the items in Defendant's truck, officers knocked

2

on Defendant's door in an attempt to question him. Defendant refused to answer the officers' questions, refused to allow the officers in his apartment, and instructed the officers not to go near his truck. While Dodge City Police Detective Michael Coil sought a search warrant, other officers waited outside Defendant's apartment on surveillance. While they waited, Jeffrey Lee Andrews, a part-time maintenance worker at the apartment complex, approached the officers and told them to "be careful" because Defendant had several guns in his apartment including an automatic weapon and a silenced weapon.

Later that morning, Detective Coil appeared before a state district judge seeking a search warrant for Defendant's apartment and truck. Detective Coil informed the judge about Defendant's violent and strange behavior at the animal shelter on May 13, the burglary at the shelter, the subsequent disappearance of Defendant's dog, and the missing narcotics. Detective Coil also told the judge Defendant's dog was deemed a vicious animal. Additionally, Detective Coil informed the judge that officers spotted evidence of the burglary in Defendant's truck and received a credible report that Defendant had several guns in his apartment. The judge found probable cause to search Defendant's apartment and truck for items related to the burglary of the animal shelter, and authorized a "no-knock" entry.[1]

II.

---

[1] Defendant also challenges the district court's pre-trial detention order on appeal. Because Defendant in his plea agreement waived his right to appeal any matter in connection with the prosecution and sentence except the district court's denial of his motion to suppress, we will only consider the court's ruling on the motion to suppress. See United States v. Hahn, 359 F.3d 1315, 1318 (10th Cir. 2004) (noting we "generally enforce plea agreements and their concomitant waivers of appellate rights").

3

The Fourth Amendment generally requires that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting a forcible entry. Wilson v. Arkansas, 514 U.S. 927, 934 (1995). Under some circumstances, however, a "no-knock" entry is permissible. "In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." Richards v. Wisconsin, 520 U.S. 385, 394 (1997). The showing an officer must make to receive a "no-knock" warrant "is not high." Id. In determining whether reasonable suspicion exists to justify a "no-knock" entry, we consider the totality of the circumstances. United States v. Banks, 540 U.S. 31, 36 (2003).

We first consider Defendant's argument that the district court improperly placed the burden on him to show the warrant was invalid. Generally, the defendant has the burden of showing a constitutional infirmity if a search or seizure was carried out pursuant to a warrant. See United States v. Maestas, 2 F.3d 1485, 1491 (10th Cir. 1993). If, on the other hand, the police acted without a warrant, the burden of proof is on the prosecution. Id. Defendant claims that even though officers searched his home pursuant to a warrant, the "no-knock" component of the warrant shifts the burden to the Government to show the warrant was valid. He cites our recent decision in United States v. Nielson, 415 F.3d 1195 (10th Cir. 2005) for support. In Nielson, we affirmed the district court's suppression of evidence where police executed a search pursuant to a "no-knock" warrant. In that case, the police offered three

4

reasons for a "no-knock" warrant: 1) a police search of defendant's home four years prior revealed a loaded gun; 2) police received a report that defendant possessed an automatic weapon and narcotics which were located in the garage; 3) detectives searched defendant's garbage revealing marijuana seeds and cloth patches used for cleaning guns. In affirming the district court's suppression of the evidence, we stated:

> *[W]e ordinarily expect the government to justify a no-knock entry in light of our case law*. Although the standard for reasonable suspicion is not high, requiring no more than a "particularized and objective basis," for believing exigent circumstances exist, the police in this case fail to provide such a basis to believe that knocking and announcing their presence would have been dangerous or futile.

Id. at 1201 (internal citations omitted) (emphasis added).

Defendant argues this language demonstrates the Government has the burden to show a warrant is valid even if it has already received judicial authorization for a "no-knock" entry in a search warrant. We are not persuaded. Nothing within Nielson indicates the Government must bear the burden of justifying a "no-knock" entry twice: first when obtaining the warrant and second when the constitutionality of the warrant is challenged by the defendant following execution of the warrant. Thus, under our long-standing rule, if police obtain a "no-knock" warrant prior to the search, the defendant bears the burden to show that entry method was not justified. Maestas, 2 F.3d at 1491. If, however, police execute a general search warrant without first knocking and announcing, then the government is required to justify use of the "no-knock" entry when the defendant challenges that entry method on appeal. Nielson, 415 F.3d at 1201; Maestas, 2 F.3d at 1491. In this

case, the police properly obtained a warrant authorizing "no knock" entry before conducting the search. Thus, the district court did not err by placing the burden on the Defendant at the time of the subsequent challenge.

Defendant also relies on Nielson to argue the information officers relayed to the state judge did not justify issuance of a "no-knock" warrant. Nielson primarily stands for the proposition that the possible presence of firearms alone does not justify a "no-knock" warrant.[2] Here, unlike in Nielson, Detective Coil informed the state district judge of several factors, other than the presence of firearms, which justified the "no-knock" search warrant. First, the officers and the state court judge who issued the warrant knew a pit bull, who had been deemed a vicious animal, may be in the apartment. Second, according to the reports from the workers at the animal shelter, Defendant acted "extremely violently angry" less than 48 hours before the search took place. A strong likelihood also existed that Defendant, who was a known drug user, possessed the narcotics stolen from the animal shelter. Defendant knew he was a suspect in the burglary as police tried to question him just hours

---

[2] In Nielson we explained:

> Although the police had evidence that a firearm was present, that fact by itself does not demonstrate an increased risk beyond that normally faced by law enforcement officers, especially where, as here, their information was that a firearm was in a loft in the garage, and they had no information leading them to believe that Nielson had interior access to the garage. Further reasons to believe that knocking and announcing police presence would be dangerous or futile . . . are also absent in this case.

415 F.3d at 1201.

before execution of the warrant. Additionally, officers knew Defendant had a previous drug conviction and a previous arrest for possession of explosives. Finally, the maintenance man informed the police just hours before they sought the warrant that Defendant had numerous firearms in his apartment including an automatic weapon and silenced weapon. In contrast, the only factors given by the police to justify the "no-knock" warrant in <u>Nielson</u> were police found a gun and drugs in defendant's house four years earlier, an anonymous tip seven weeks prior to the search indicating the defendant had a gun and some drugs stored in his garage, and evidence the defendant smoked marijuana. Considering the totality of the circumstances in this case, we conclude the police had reasonable suspicion to believe knocking and announcing their presence would be dangerous or futile.[3]

As a final effort to persuade us to overturn the district court's denial of his motion to suppress, Defendant claims we should ignore factors which the police provided to justify the "no-knock" warrant other than the presence of firearms because, according to Defendant, the state district judge considered only the firearms in issuing the "no-knock" warrant.

---

[3] Even if we were to reach the opposite conclusion, in light of the Supreme Court's very recent decision in <u>Hudson v. Michigan</u>, No. 04-1360, slip op. at 7 (June 15, 2006), Defendant would not be entitled to exclusion of the evidence seized during the search. In <u>Hudson</u>, the Supreme Court considered whether the exclusionary rule was an appropriate remedy where Michigan police officers admittedly violated the knock-and-announce rule during execution of a search warrant. Reasoning that the knock-and-announce rule does not protect "one's interest in preventing the government from seeing or taking evidence described in a warrant," the court decided application of the exclusionary rule is not the proper remedy if police officers violate the knock-and-announce requirement while executing a search warrant. Although the facts before us are marginally different than those presented in <u>Hudson</u>, its rational appears to extend to these circumstances.

7

Defendant reaches this conclusion based on the judge's following statement at the conclusion of the hearing: "I find also that due to the credible report of firearms being present that a no-knock entry is authorized." We cannot conclude, based on this isolated comment, that the judge ignored all the information he was provided and only considered the presence of firearms in issuing the warrant. The judge heard the testimony of Detective Coil and presumably considered the totality of all the circumstances discussed above prior to issuing the warrant. Furthermore, we analyze the information provided by police, and therefore the validity of the warrant, through the eyes of an objective magistrate, not the subjective view of the magistrate making the decision. See United States v. Pressley, 978 F.2d 1026, 1027 (8th Cir. 1992) (noting in the context of an affidavit containing false information, the court strikes the false information from the affidavit and then considers whether the remaining information would satisfy and "objective magistrate" that probable cause exists to issue the warrant).

Because reasonable suspicion to believe knocking and announcing the police presence would be dangerous or futile justified issuance of a "no-knock" entry, the order of the district court denying Defendants' motion to suppress is–

AFFIRMED.